DURFEE v. DORR.

Opinion delivered November 19, 1917.

1. NEGLIGENCE—INJURY TO PATIENT IN HOSPITAL—INSTRUCTION AS TO MODE OF INJURY.—Deceased was a patient and inmate at appellee's hospital, upon the second floor, where he had been operated upon, and where he was desperately ill. He was left unattended in his room, and was later found on the ground below a balcony and at the foot of some stairs. He died shortly thereafter. Appellant, deceased's father brought suit against appellee, alleging negligence, and also alleging that deceased "walked out of said room and out of the upstairs door upon a small platform, and fell from the banisters or down the steps." The court charged the jury that in order to find for the plaintiff they must find that deceased "fell from the porch of the sanitarium to the ground below." No one saw deceased fall, and it was entirely unexplained. *Held*, it was error to limit a recovery simply to a "fall from the porch."

2.  NEGLIGENCE—INJURY TO PERSON IN HOSPITAL—PROOF OF NEGLI-
    GENCE BY CIRCUMSTANCES.—Under the facts as set out in the
    above syllabus, the trial court charged the jury: "You are in-
    structed that negligence can not and will not be presumed from
    the circumstances of Dolph Durfree's death, but it is incumbent
    upon the plaintiff to prove such acts of negligence and careless-
    ness on the part of the defendant as are alleged in his com-
    plaint." *Held,* the giving of this instruction was erroneous, when
    objected to specifically on the ground that "the plaintiff's proof
    consisted of a series of circumstances, and this instruction, in
    effect tells the jury that they could not consider those circum-
    stances."

3.  NEGLIGENCE—DEATH—PAIN AND SUFFERING—CONTRIBUTIONS.—Un-
    der the facts as set out in syllabus 1, above, it is improper for
    the trial court to charge the jury, that if they found that de-
    ceased may have died from causes other than appellees' negli-
    gence, that plaintiff could not recover. Plaintiff was suing both
    for loss of contributions, and for pain and suffering. Although
    deceased may have died from other causes than appellees' negli-
    gence, there could be a recovery for additional and increased pain
    and suffering caused by appellees' negligence.

4.  APPEAL AND ERROR—GIVING CORRECT AND INCORRECT INSTRUCTIONS.
    —The instructions of the trial court must, as a whole, properly
    declare the law, and a cause will be reversed where some of the
    instructions given are erroneous, although others given properly
    state the law.

5.  NEGLIGENCE—TREATMENT OF PATIENT IN HOSPITAL—OPINION OF
    EXPERT WITNESSES.—In an action for damages for injuries re-
    ceived by deceased by reason of the negligence of the manage-
    ment of a hospital in which deceased was a patient, practicing
    physicians, who qualified as experts, may testify as to the char-
    acter of attention a patient should receive in a hospital.

6.  APPEAL AND ERROR—DISPUTED EVIDENCE—ERRONEOUS INSTRUCTIONS.
    —Where the evidence is conflicting the giving of erroneous in-
    structions will call for a reversal of the judgment.

Appeal from Independence Circuit Court; *Dene H. Coleman,* Judge; reversed.

*Hal L. Norwood* and *Richardson & Ruddell,* for appellant.

1. There was error refusing and modifying the in-
structions asked by plaintiff. No 1 was taken from the

decision of this court on the former appeal. 123 Ark. 542-7. The court erred in adding the words "and if a cause is alleged and proven." 80 S. E. 918; 8 N. C. C. A. 369, 384.

No. 3 should have been given as asked. 79 Ark. 490. No. 3 is a correct statement of the law. 79 Ark 490, 498; 116 *Id.* 82; 105 *Id.* 161; Ann. Cas. 1915, D 342; 64 L. R. A. (N. S.) 370.

2. There was error in giving instructions requested by defendants. Nos. 5, 6, 7, 8 and 9. Cases *supra;* 98 Ark. 352; 91 *Id.* 343; 116 *Id.* 82; 103 *Id.* 81; 123 Ark. 542-7.

3. It was error to admit expert testimony of Drs. Snodgrass and Merriwether as to what attention, in their opinion, it was necessary to give the patient. 62 Ark. 70, 55 *Id.* 593; *Ib.* 65; 66 *Id.* 494.

*Joe McCaleb, Jno. B. McCaleb* and *Lyman F. Reeder,* for appellees.

1. The law of this case was settled in 123 Ark. 546, 7-8. Defendants were bound only to the degree of care proportionate to the danger to be apprehended, judged by the condition of affairs before the happening of the accident. 14 N. Y. Supp. 881; 148 N. W. 575; *Ib.* 582; 17 L. R. A. (N. S.) 1167; 14 *Id.* 784; 174 S. W. 409; 63 W. Va. 84; 59 S. E. 943.

2. The facts are undisputed and no fall was proven. The verdict is right, for no liability was shown, and this court will not reverse for possible errors in the instructions, not prejudicial. 126 Ark. 469; 123 *Id.* 549; 97 *Id.* 564; 88 *Id.* 236; 120 Id. 236.

3. The jury could not arbitrarily disregard the undisputed evidence. 118 Ark. 349; 96 *Id.* 37.

SMITH, J. A statement of the facts upon which appellant predicates his cause of action will be found in the opinion rendered upon a former appeal (*Durfee v. Dorr,* 123 Ark. 542), and we refer to that opinion for a statement of the case, and we will set out here only such portions of the evidence as are necessary to an un-

derstanding of the questions raised on this appeal. At the conclusion of the trial from which the former appeal was prosecuted, the court directed the jury to return a verdict in favor of the defendants, and we reversed the judgment pronounced upon that verdict because, as we there stated, the undisputed proof did not show that the keepers of the sanitarium had discharged their duty to their patient. Upon the remand of the cause and its trial anew, the cause was fully developed upon both sides, and a verdict was returned by the jury for the defendants, and this appeal has been prosecuted to reverse the judgment of the court pronounced thereon.

The opinion on the former appeal is the law of the case, and we undertook there to define the duty owing to appellant's intestate by appellees in the operation of their sanitarium. Appellees say that the instructions given the jury conformed to the law as announced in the former opinion. They say also that, whether this be true or not, the case has now been fully developed, and that the undisputed evidence shows that there can be no liability on their part, and that a judgment against them could not be permitted to stand, and that it is therefore unnecessary to consider whether the instructions correctly declared the law or not. We will consider these instructions in the order stated.

(1) Instruction No. 5, given over the objection of appellant, contained a recital of the findings which the jury must make before their verdict could be for the plaintiff, the third paragraph of which was "that Dolph Durfee fell from the porch of the sanitarium to the ground below."

Specific objection was made to this instruction as follows: "Because it is not incumbent upon plaintiff to prove exactly how such injury occurred, * * * and because the instruction does not follow the allegations of the complaint."

It will be borne in mind that it was the theory of the appellant that the sanitarium was in darkness, because the city lighting plant, which furnished light to

the sanitarium, had been put out of commission by the unprecedented flood in the White River, on which Batesville is located; that only a few days prior thereto an operation for an abscess on the liver had been performed on appellant's son, Dolph Durfee, and that the young man was very desperately ill. Dolph Durfee was found lying on a pile of weeds, and his night shirt was damp, although the moon was shining brightly. Young Durfee was conscious when he was found by a Mr. Hardy, whose attention was attracted by Durfee's call for help. Durfee could give no explanation of his presence on the ground, although he gave the men who carried him upstairs the information which enabled them to find his room and return him to his bed. Two theories are advanced. The first is, that Durfee fell from the porch of the sanitarium to the ground below. The other is that he fell down the stairs up which he was carried when he was returned to his room. No one knows in which manner the injury occurred. Yet the third paragraph of the instruction set out above tells the jury there could be no recovery unless the testimony shows "that Dolph Durfee fell from the porch of the sanitarium to the ground below." If appellees owed the patient a duty which they did not perform, and as a result of their failure to discharge that duty to him he was allowed to leave his bed and room and roam about as his fever, or pain, or delirium carried him, it could make no difference whether he fell from the porch or down the stairs. The complaint alleged that "said Durfee walked out of said room and out of the upstairs door upon a small platform, and fell from the banister or down the steps." He could have gotten from his room to the ground where he was found in either manner, and the court should not have made it a condition precedent to recovery that the jury find affirmatively that he reached the ground in one manner to the exclusion of the other. If appellees are otherwise liable for their lack of care to the patient, it must be immaterial whether the patient fell off the platform to the ground or fell down the steps to the ground.

(2)   Instruction No. 6, given over appellant's objection, reads as follows: "You are instructed that negligence can not and will not be presumed from the circumstances of Dolph Durfee's death, but it is incumbent upon the plaintiff to prove such acts of negligence and carelessness on the part of the defendants as are alleged in his complaint."

Specific objection was made to this instruction "because the plaintiff's proof consisted of a series of circumstances, and this instruction, in effect, tells the jury that they could not consider the circumstances."

Counsel for appellees concede, of course, that it was proper for the jury to consider the circumstances that were proven in connection with the injury and death of the deceased in determining whether appellees were negligent; but this instruction is now defended upon the ground that it is, in effect, a declaration that the doctrine of *res ipsa loquitur* does not apply. We can not so consider it, in view of the specific objection made to it. All doubt on the subject appears to be removed when we consider that the court refused, at appellant's request, to modify the instruction by adding the following qualification: "In determining whether plaintiff has proved that the defendants were negligent as alleged, you are authorized to take into consideration all of the circumstances that have been proved in connection with the injury and death of the deceased."

(3)   Instruction No. 8, given over appellant's objection, reads as follows: "If you believe from the evidence in this case that deceased, Dolph Durfee, may have died on account of natural causes, or that his death may have been due to other causes than the acts of carelessness and negligence complained of by the plaintiff herein, then the plaintiff has not satisfied the burden of proof devolving upon him, and your verdict should be for the defendants."

Specific objection to this instruction was made because it told the jury that the plaintiff could not recover unless he had proven that Durfee died as the result of

· carelessness and negligence complained of, when plaintiff has the right to recover, as administrator, for the pain and suffering endured by Durfee, although his death may not have been caused by the injury received from the negligence of the defendants, and plaintiff asked that the instruction be amended by adding "as to the administrator in his own right."

The requested modification should have been given. The plaintiff was suing, not only for the loss of contribution on the part of the son to his father, but also for pain and suffering. The finding that death would have ensued without regard to the negligence complained of, would have defeated the recovery of compensation for loss of contribution. But that finding would not, necessarily, have defeated a recovery to compensate the pain and suffering resulting from such negligence. If there was such conscious pain and suffering on the part of the patient, in addition to the pain which his existing condition would have caused him, and the additional or increased pain was caused by appellee's negligence, there could be a recovery to compensate such pain, although the finding that death would otherwise have ensued defeated a recovery on account of the loss of contributions.

(4)   In instructions numbered 1, 2, 3 and 4, the court announced the law in conformity with the opinion of this court on the former appeal. But it does not suffice that some of the instructions correctly declared the law. It is essential that the instructions, as a whole, do so, and we have already expressed our disapproval of instructions numbered 5, 6 and 8, set out above.

(5)   Objection is made by appellant also to the action of the court in permitting practicing physicians, who qualified as experts, to testify as to the character of attention a patient should receive in a hospital. We think this evidence was competent, as it related to a subject upon which the average juror would have no information or experience upon which he would be in position to formulate an intelligent conclusion unless he

based his conclusion upon the opinion of one qualified to speak as an expert.

(6)   It is finally insisted that the erroneous instructions set out do not constitute prejudicial error, because as insisted by appellees, the undisputed evidence shows that the patient was not delirious, and that there was nothing about his condition which made it reasonably appear that any attention should have been given the patient which was not, in fact, shown him.   In support of this contention, the nurse who was in charge of the hospital on the night in question testified that she saw the patient at about 8:30 p. m., which she said was only fifteen or twenty minutes before his injury, and that he was then asleep, and that he had not been unconscious at any time.   And the attending physicians, who were the owners of the sanitarium, and were the defendants below, also testified that the patient had not been unconscious prior to his injury, and that he remained conscious up to the time he died, which was about two hours after his injury.

Appellant saw his son at about 7 p. m., at which time he was rational.   A nurse testified that she had placed her bed in an adjoining room and only six feet away, so that she might readily answer any call or alarm from that room, and that there was a call-bell at each patient's bed and a nurse always within hearing of the bell.   It was shown that no hemorrhage had occurred, and the dressings of the wound were dry, and appellees testified that there would have been a hemorrhage had the patient fallen off the porch.   The nurse on duty admitted she was not present when the patient was returned to his room, but she says she was engaged at the time in taking off her uniform and putting on her bed-room slippers and kimono and fixing for the night, and that she heard the parties bringing the patient upstairs and into his room just after they did so.   The doctors were in the patient's room for the last time before his injury at 8:30, at which time appellant was told that there was not a chance in the world for the patient to recover;

and another one of the physicians testified he saw the patient in his room and asleep at 9:30, although he did not enter the room at that time. It must be conceded that, according to this testimony, appellees were not negligent in their treatment of the patient, and we should hold, under this evidence, as a matter of law that there was no negligence if the testimony was undisputed. But such is not the case. On appellant's behalf the testimony tended to show that the patient might have fallen from the platform over the banisters, which were only two feet and two inches high, on a pile of weeds lying beneath, and a physician testified in behalf of appellant that there would not necessarily have been any broken bones or hemorrhage had he done so, and this witness stated that the act of the patient in continually drawing up his legs, after he had been placed back in his bed—a circumstance testified to by the witnesses who placed him in bed—might indicate an internal injury and consequent pain. The building was in darkness, and none of the doors were fastened, and no one was in sight when the patient was carried upstairs, and the jury might have found that the nurses who were supposed to be on watch were in fact, asleep, as the nurse who did appear was dressed in her kimono, and the nurse who said her bed was only six feet away did not appear on the scene at all. Had the jury refused to believe the nurses, as they might have done, they might have found that a man, known to be desperately ill, was left to die alone, as he was found between 10 and 11 p. m. and a witness stated that he had been sitting for more than a half hour before that time in front of the hotel directly across the street where he would have seen Durfee had he fallen from the porch or down the steps, and that nothing of that kind had occurred during that time. The jury might have concluded, from the fact that the patient had left the room, and had been lying on the weeds for probably an hour, and that he could give no account of how he came there, that he was delirious when he left his room. The jury might also have found that professional nurses should

have anticipated the probability of a patient becoming delirious whose death was expected at any minute, and might also have found that the nurse's call-bell would be unavailing to a person *in extremis.* Appellant testified that he was called about midnight and was told that his son had gotten by his nurse and was not doing so well, and he was not allowed to see his son until after his death. The undertaker testified that there were some small skinned places on one knee of the patient, and the other knee was bandaged up, and there were several small scratches about the deceased's face. Should the jury find the facts to be as contended by appellant, we could not say, as a matter of law, that no negligence was shown. Consequently, we must reverse the judgment for the erroneous instructions set out above. It is so ordered.

McCULLOCH, C. J., (dissenting). The obvious meaning of instruction No. 6 is that negligence can not be presumed merely from the happening of Durfee's death, and it is a correct declaration of the law on the subject. If the word "circumstances" had been used in the singular, there would not be the slightest doubt about the meaning, but the use of the plural was not, I think, calculated to raise a doubt in the minds of the jury as to what the court meant.

It is conceded by the majority of the judges that the proof wholly fails to establish negligence on the part of the physicians in the treatment of the patient, and it seems equally clear to me that according to the undisputed testimony the patient was not delirious before the accident, and that his condition was not apparently such as to warrant the inference that the physicians or nurses could or should have anticipated that he might become delirious and need constant attention. I think the judgment ought to be affirmed.