HATCHETT *v.* STORY.

4-9873                      252 S. W. 2d 78

Opinion delivered November 3, 1952.

*J. F. Koone* and *N. J. Henley,* for appellant.

*Opie Rogers,* for appellee.

GEORGE ROSE SMITH, J. This is an action by M. V. Hatchett, a real estate broker, to recover a $900 commission for having procured a purchaser for a farm owned by the appellee, Elmo Story. Story's answer admits liability for $300 but denies liability for any greater amount. A jury trial resulted in a verdict for the appellant for $300. For reversal the appellant assigns errors in the court's instructions, but since we have concluded that there was no substantial evidence to support the claim for a $900 commission we need not discuss the instructions that are complained of.

On August 30, 1950, Story listed his farm with Hatchett. The pertinent paragraphs of the contract stress the matter of procuring a purchaser:

"(B)  I [Story] grant you the sole and exclusive right to procure a purchaser for said property, at a price of $9,000 . . .

"(C)  I agree that if a purchaser is procured through you, or your representative, at a price and on terms as herein stated . . . I will pay you forthwith a commission of 10% . . .

"(D)  I agree that if the property described herein is sold during the term of this agreement to a purchaser procured through my own efforts, or through any broker, agent, person or organization other than you, I will forthwith pay you 1/3 commission as provided in paragraph (C) above."

Thus the question we are considering is whether there is any substantial evidence to show that Hatchett or his representative procured the purchaser, John Waters, who eventually bought the farm for $9,000.

The testimony, viewed most favorably to Hatchett, shows that Waters first visited Hatchett's office on March 19, 1951, in the hope of buying a home. Mrs. Hatchett testified that she had previously mailed to Waters, at his address in Iowa, certain mimeographed circulars that included a description of the Story farm and some sixteen or eighteen other properties. The jury could have inferred that Waters came to Arkansas as a result of having received these circulars, but there is no evidence to indicate that Waters was interested in or inquired about any of the properties described in the circulars.

On the day of Waters' visit Mrs. Hatchett showed him other property, but no sale was made. She did not show him the Story farm, nor was it even mentioned. The next day Waters had lunch at June LaTure's cafe, next door to the Hatchett office. Mrs. LaTure knew that the Story place was listed with Hatchett; she had been interested at one time in buying it. To be agreeable to a customer Mrs. LaTure chatted with Waters and asked him if he had yet found a home. She then men-

tioned and described the Story farm. As Waters seemed interested she telephoned the Hatchett office in his presence and learned that the property was still for sale. Thereafter Waters communicated directly with Mrs. Story, and their negotiations resulted in a sale.

The appellant must rely on three facts to sustain his contention that he procured the purchaser within the terms of the contract. First, it is said that Waters came to Clinton, Arkansas, in response to literature sent out by Hatchett. This may be true, but a broker does not procure a purchaser merely by being responsible for his presence in the general vicinity of the property. It was incumbent upon Hatchett to show not only that he induced Waters to visit Clinton but also that Hatchett's efforts were the efficient cause of Waters' becoming interested in the Story farm. That showing is wholly lacking.

Second, it is contended that Mrs. LaTure's telephone call to the Hatchett office sufficiently connected Hatchett with the sale to constitute him the procuring cause. Mrs. LaTure, however, was not the broker's representative, and it is not indicated that Mrs. Hatchett, who answered the telephone, said anything more than that the Story property was still on the market. A broker does not procure a sale by merely answering such an inquiry, nor is he entitled to the benefit of a former prospective purchaser's action in bringing the buyer and seller together.

Third, while Mrs. Story and Waters were negotiating the sale Waters requested that certain minor improvements be made. Mrs. Story mentioned this request to Hatchett when she happened to meet him in Mrs. LaTure's cafe, and Hatchett estimated that the work would cost less than $100. Mrs. Story, doubtless relying on this advice, later acceded to Waters' request. We do not consider that this chance encounter would have warranted the jury in finding that Hatchett thereby complied with his duty to procure a purchaser. If procurement was intended to mean the mere introduction of the

parties the event had already occurred when Hatchett gave his advice. And if procurement had the broader meaning of bringing about the consummation of the sale it is well settled that the broker's efforts must be the proximate cause of the transaction rather than a mere incidental link in the chain of causation. *Neiswender* v. *Campbell,* 119 Calif. App. 504, 6 P. 2d 584; *John T. Burns & Sons, Inc.* v. *Hands,* 283 Mass. 420, 186 N. E. 547; *Low* v. *Paddock,* (Mo. App.) 220 S. W. 969.

For convenience we have mentioned separately the three factors tending to connect Hatchett with the sale, but of course we do not mean to imply that a broker's activity is to be tested as a succession of disconnected acts rather than as a continuous course of conduct. Here, however, Hatchett's three points of contact with the transaction had nothing to do with one another; their cumulative effect falls short of establishing Hatchett as the procuring cause of the sale. The evidence, with all inferences resolved in Hatchett's favor, shows that it was Mrs. LaTure who brought the parties together and that the negotiations were carried through by Mrs. Story herself. Upon the testimony the trial court would have been justified in directing a verdict for Hatchett in the sum of $300 only, and in that view the possibility that erroneous instructions were given becomes immaterial.

Affirmed.

WARD, J., dissents.