American Life Insurance Company *v.* Moore.

4-8969                                      223 S. W. 2d 1019

Opinion delivered November 7, 1949.

*Paul L. Barnard* and *Linwood L. Brickhouse,* for appellant.

*Ben B. Williamson,* for appellee.

George Rose Smith, J. Judgment was recovered below upon a group accident policy issued by appellant to appellee Moore. The claim arose from the death of Dink Looney, one of Moore's employees and the husband of appellee Docia Looney. For reversal it is contended only that a verdict should have been directed for the insurer.

Looney's employer is a sawmill operator. While cutting timber on May 31, 1948, Looney accidentally sustained a compound fracture of his right leg. He was taken to a hospital for an operation by which the fracture was reduced. The leg was placed in a cast, and after eleven days the patient was returned to his home with instructions to remain in bed. On the night of July 12 Docia Looney heard her husband make an unusual noise and went at once' to his bedside. In her words,

"I just saw his deathly look all over his face, and he was turned blue, and he died in less than ten minutes."

Dr. U. S. Monroe had been called immediately, but did not arrive until after Looney's death. After examining the body and learning the history of the case he attributed death to a pulmonary embolism resulting from the fracture. The medical witnesses define an embolus as a clot of blood or other matter that becomes detached from its point of origin and enters the blood stream. The pulmonary artery is so small that it may be completely obstructed if the embolus lodges there. This condition, known as pulmonary embolism, stops the circulation of blood to the lungs and causes almost instant death.

On cross-examination Dr. Monroe admitted that there are cases known to the medical profession in which pulmonary embolism has been caused other than by accidental injury or surgery. In this case an autopsy would have been required to determine the cause of death with certainty. Nevertheless, Dr. Monroe reiterated his opinion that Looney's death resulted from pulmonary embolism caused by the accidental injury. On the other hand, appellant's medical witness—who stated that he was as familiar with the subject as the average physician —testified that an embolism never occurs more than three weeks after the injury. In his opinion, based on his own experience and the textbooks he had examined a few days before the trial, it was not possible for an injury sustained on May 31 to produce pulmonary embolism on July 12—an interval of forty-two days. This witness was unable, however, to state the cause of Looney's death.

This conflicting expert testimony presented a question for the jury. As we said in a similar situation, in *Mid-Continent Life Ins. Co. v. Chappell,* 174 Ark. 712, 294 S. W. 4, when medical men differ about the matter the verdict is not contrary to natural or scientific principles, nor is it based upon what is not and could not be true.

Appellant insists that Dr. Monroe's testimony is speculative, since he admitted the possibility that death was due to some other cause. But medicine, like the law, is not an exact science. If mathematical certainty were required, a surgeon would act at his peril in advising his patient to undergo an operation. The law does not compel adherence to a standard so precise. The effect of Dr. Monroe's testimony is that in his opinion the most probable cause of death was a pulmonary embolism attributable to the fractured leg. He stated that Looney had not had any other illness or any symptom of a heart ailment that might have brought about his sudden death. A physician of forty years' experience, he had examined the body and learned the insured's case history. No alternate theory has been proposed by appellant. We are unwilling to say that Dr. Monroe's testimony is conjectural merely because his opinion did not preclude every other possible cause of death.

Affirmed.