REED *v.* MARLEY.

5-1758                                    321 S. W. 2d 193

Opinion delivered March 2, 1959.

*Rex W. Perkins* and *E. J. Ball,* for appellant.

*Pearson & Pearson,* for appellee.

CARLETON HARRIS, Chief Justice. This appeal involves the interpretation of Subsection (a), Ark. Stats. § 28-357 (Section 10 of Act 335 of 1953). The subsection reads as follows:

"In an action in which the mental or physical condition of a party is in controversy, the court in which the action is pending may order him to submit to a physical or mental examination by a physician selected by the petitioner. The order may be only on motion for good cause shown and upon notice to the party to be examined and to all other parties and shall specify the time, place, manner, conditions, and scope of the examination and the person or persons by whom it is to be made."

The facts are as follows: Mozeal Reed, appellant herein, filed a personal injury action against appellee, John Marley, on February 26, 1958, seeking to recover damages for alleged permanent personal injuries arising from an automobile collision on August 30, 1957. On April 21, 1958, Marley filed a motion with the court, seeking an order requiring appellant to submit "to a medical and physical examination * * * the physical condition of the plaintiff is in controversy, and the defendant has good reason and cause to believe that the physical condition of plaintiff is not as serious as alleged in her complaint." Appellant resisted the motion in a response which asserted that appellant had already been examined by a Fayetteville physician at

the instance of the adjuster for appellee's insurance company, and there was no statutory requirement for a second examination. On May 12th, the court entered an order requiring appellant to submit to such an examination by Dr. J. L. Richardson in Tulsa, Oklahoma, and required appellee to advance to her the sum of $35 to defray expenses for making the trip to Tulsa. Appellant objected and excepted to the order, and approximately two weeks later, filed a motion to set same aside "for the reason that no proof was offered in support of said motion." Appellee responded as follows:

"That the attorney representing the plaintiff agreed in open Court to the entry of said order, had notice of the hearing and appeared in and before the Court and stated that he did not care or object to the entry of such order."

Following a hearing upon the motion and response, the court, on June 16th, reaffirmed its earlier order by directing appellant to make the trip to Tulsa for an examination by Dr. Richardson on June 27th, at 2 p.m. Upon appellant's refusal to submit to the examination by Dr. Richardson, the complaint was dismissed by the court. From the order of May 12th ordering Mrs. Reed to appear before Dr. Richardson for the physical examination, and from the order dismissing her complaint, appellant brings this appeal. Three points are alleged for reversal.

"I. *The Motion for Medical Examination Was Not in the Form Required by Ark. Stats. (1947) Section 28-357. The Trial Court Erred in Holding to the Contrary.*

II. *Marley Did Not Show 'Good Cause' in Support of His Motion For a Medical Examination As Required by Ark. Stats. (1947) Section 28-357. The Trial Court Erred in Holding to the Contrary.*

III. *The Trial Court Was Without Power to Require Appellee to Submit to a Medical Examination Before a Physician Outside the State of Arkansas. The Trial Court Erred in Holding to the Contrary.*"

These, we will discuss, considering the last point first, and the other two together.

Before discussing these alleged errors, we think it well to mention a matter referred to in appellant's pleadings, and testified about at the hearing on June 16th, though not emphasized in the brief. Mrs. Reed was injured while riding in a car with a Mrs. Summers. On the same day, appellant went to the office of Dr. Preston L. Hathcock, a Fayetteville physician, for an examination. Appellant asserts that this examination was made at the behest of the adjuster of appellee's insurance company. Admittedly the adjuster talked with both Mrs. Reed and Mrs. Summers on the date of the collision, but the adjuster testified that the suggestion for the examination by Dr. Hathcock, came from Mrs. Summers to Mrs. Reed, Mrs. Summers being aware that Hathcock was appellant's personal physician. This testimony was not denied, as neither Mrs. Reed nor Mrs. Summers testified, and accordingly, the record does not reflect that the examination was requested by the adjuster. Were it otherwise, appellee would not necessarily be precluded from obtaining another examination, since it would have been difficult, if not impossible, to ascertain the permanent nature of the injuries so soon after they were incurred.

Relative to point III, counsel point out that the court has no control over such physician, and if the doctor should find serious injuries, but refuse to appear and testify on behalf of Mrs. Reed, she could not compel him to do so. We deem the argument unsound, for it would also be true that appellee has no remedy to require the doctor to appear in Arkansas to testify, though the examination was made for his benefit. The order of examination is not for the benefit of appellant, is made only at the instance of appellee, and for his benefit; this is a hazard which should only concern the moving party. Of course, the doctor's deposition could be taken, and for that matter, appellant is afforded sufficient protection by Subsection (2) of Subsection (b) of Section 28-359, Ark. Stats. Supp. We find no requirement

in any of our statutes which would preclude such an examination simply because a plaintiff is required to go out of state. In the New York case of *Hollister* v. *Robertson*, 208 App. Div. 449, 203 N. Y. S. 514, in a *per curiam* by the Appellate Division of the Supreme Court, it was held that a resident plaintiff could not be examined outside the state, but this finding was based upon the New York Statute, which prohibited such an examination.[1] The mere fact that one is required to go to an out of state physician, is not, standing alone, unreasonable. In fact, in many instances it may well be the most convenient and logical place for the examination. For instance, if one is hurt in Texarkana, Arkansas, would any inconvenience normally be suffered by a plaintiff directed to submit to an examination across the line, in Texarkana, Texas? Or, if one is hurt in West Memphis, Arkansas, would it not be reasonable to require an examination in Memphis, Tennessee? The same would be true in other sections of the state, where a plaintiff resides close to the border of a sister state. It would seem rather illogical to require a person to travel from Texarkana or West Memphis to, say, Little Rock (distances of approximately 150 and 170 miles) for such an examination, if the same purpose could be achieved by holding the examination at a nearer location, though in another state. So — we reach the conclusion that the mere fact Mrs. Reed was directed to go outside the state for the examination, is not, within itself, sufficient reason for holding that the trial court abused its discretion in entering the order.

It is alleged that the motion for medical examination is not in the form required by statute, and that proof of ''good cause'' for the order was not offered. Section 28-357 (heretofore quoted) is a copy of Subsection (a) of Rule 35 of the Federal Rules of Civil Procedure, U.S.C.A., except for one phrase which will be hereinafter discussed. At the outset, it is well to point out that the moving party does not have an *absolute right* to the order requiring the examination. The rule

---

[1] Civil Practice Act, Section 300.

itself (and likewise our statute), recites that the court in which the action is pending *may* order the physical or mental examination, and repeated decisions hold that the granting of the order lies within the sound discretion of the court. *Bucher* v. *Krause,* 200 F. 2d 576, *Strasser* v. *Prudential Insurance Co. of America,* 1 F.R.D. 125. While the rule has been liberally construed, "fishing expeditions" will not be allowed. The rule states that the order may be made "only on motion for good cause shown." As stated by the District Court in *Leach* v. *Greif Bros. Cooperage Corp.,* 2 F.R.D. 444:

"It is difficult to lay down a definition of good cause that would apply to every particular case. There is a wide latitude." Of course, allegations that might constitute good cause in one instance might be insufficient in another, for the term is elastic, and must be considered in the light of the circumstances in each particular case. In referring to the rule, Barron & Holtzoff's Federal Practice and Procedure, Sec. 822, recites:

"No official form for a motion under this rule was suggested by the Advisory Committee as is the case under other rules, but notice of the motion should be given in the usual form and subject to the usual provisions." The motion is frequently supported by affidavit, as provided by Sub-section (d) of Rule 6. We are of the opinion, and it certainly seems established, that the motion, whether supported or unsupported by affidavit, should cite the reasons which allegedly entitle the moving party to the order.

Section 28-357 goes further than the Federal rule, in that our statute recites that the movant may select the physician to conduct the examination. However, we think the same interpretation applies as heretofore set out, *i.e.,* the moving party does not have an *absolute right* to select a physician, for the matter rests within the discretion of the trial court. Of course, if the examination is to be made in the home town of plaintiff, or if a defendant should request a particular doctor, though located elsewhere, and there is no objection, the court would likely enter the desired order, but as we

construe the statute, if there is timely objection upon the part of the party to be examined, the moving party is *required to show good cause for the examination being made by the particular physician requested* — and the greater the distance to be traveled — the stronger the cause that must be shown.

The transcript recites the following stipulation:

"It is stipulated that Dr. J. L. Richardson of Tulsa, Oklahoma, is a qualified, licensed and practicing orthopedic surgeon at 1916 South Utica, Tulsa, Oklahoma.

It is further agreed and stipulated that Dr. William Stanton of Fort Smith, Arkansas, Dr. Hoyt Kirkpatrick and Dr. William Knight, Fort Smith, Arkansas, are duly licensed, qualified and practicing orthopedic surgeons. It is further stipulated that Dr. Harold Martin, Veterans Administration Hospital, Fayetteville, Arkansas, is a regularly licensed, qualified and practicing orthopedic surgeon in Fayetteville, Arkansas.

It is further stipulated that Dr. William Carruthers, Dr. William Steele and Dr. Sam Thompson, are regularly licensed, qualified and practicing orthopedic surgeons in Little Rock, Arkansas."

The evidence taken at the hearing on June 16th, reflects that Tulsa is a distance of 121 miles from Fayetteville. Fort Smith is approximately 62 miles, and Little Rock is about 200 miles. Since the qualifications of physicians at Fayetteville and Fort Smith were admitted, we are of the opinion that appellee was required to show a good and valid reason for sending appellant 121 miles away. Of course, we recognize the fact that various individuals daily make different choices in selecting their physician, though there are others as conveniently located, and who are admittedly qualified, but we do not think it was the intent of the legislature to give a moving party the right to have the examination made by his selected physician, without any limitation whatsoever. If such were the case, a movant could arbitrarily request that the examination be made by a physician in New York or California, though other physicians,

more conveniently located, and fully as capable, were available. No one would seriously argue that such a right was intended. Of course, we can visualize possible occasions where an order requiring the injured party to go some distance for an examination by nationally known specialists, or nationally recognized clinics, might be in order. In accord with these views, we are of the opinion that a moving party has the right to have the injured person sent some distance away, particularly where unusual injuries or symptoms are alleged, *if it be shown that a satisfactory examination by a competent and qualified physician cannot be had at a nearer locale.* For that matter, a movant might not always be entitled to have the injured person examined by a physician of his own choice, even though such physician should reside in the same town as the injured party. For instance, the plaintiff might show that personal animosity existed between the selected physician and himself, or give other reasons which would make it inadvisable, or unfair, for the requested doctor to make the examination. In line with this reasoning, and applying same to the case before us, it follows that there are two requirements which must be met before appellee is entitled to the order. First, good cause for the medical examination must be shown. Second, good cause must be shown why the examination should be made by Dr. Richardson. We are of the opinion that the assertion by appellant of permanent injuries is sufficient cause for the former. The remaining question is whether good cause was shown for requiring appellant to make the trip to Tulsa for examination by Dr. Richardson.

The motion for the examination is not in proper form, for it does not even name the physician who is to make the examination, let alone allege any reasons why this particular doctor should be appointed. However, the only objection in the response to the motion filed by appellant, is that Dr. Hathcock had already examined her and the statutes of the state of Arkansas do not require appellant to be examined by a physician on more than one occasion. Nor did appellant, in filing her motion to set aside the order, raise any objection to the

144

form or content of the motion. She simply alleged that "no proof was offered in support of said motion." Any deficiencies in the form, were therefore waived. While the transcript does not include any testimony that may have been offered on May 12th,[2] the order reflects that respective attorneys for appellant and appellee were present, and recites *"from the oral and documentary evidence adduced,*[3] the court finds: that the defendant is entitled to have the plaintiff examined by a doctor of his own selection, at the expense of the defendant, * * *."*, and names Dr. Richardson. Of course, there being no evidence to the contrary, we accept the recitations of the order as being correct. The hearing on June 16th was largely devoted to an attempt to show that appellee's insurance company, rather than appellee, was attempting to obtain the order, that appellant had already been examined by Dr. Hathcock at the suggestion of the company's adjuster, and that Richardson could not be compelled to come to Fayetteville. At any rate, there was no showing that proof had not been offered at the May 12th hearing, and no evidence was offered by Mrs. Reed that the trip to Tulsa would occasion inconvenience or cause undue hardship. In her brief, appellant makes the statement that had she known Richardson was to be the proposed examining physician, she would have offered proof to the effect that in the past, he had been prejudiced in behalf of the person employing him, and would testify favorably for such person. Of course, at the time of the hearing on the motion to set aside the May 12th order, appellant *did know* by whom the proposed examination would be made, but no proof to substantiate her assertion is found in the record. Actually, it would appear that appellant's principal objection was based upon the fact that she was required to go out of state. This is reflected by the following colloquy between appellant's counsel and the court as the June 16th hearing concluded:

---

[2] The designation of record only calls for the testimony taken on June 16th.

[3] Emphasis supplied.

"Mr. Ball: * * * Mr. Pearson has tendered to us $35.00 for expenses to go to Tulsa. We have refused the tender.

The Court: Let the record show that this order here is in the record, in which I ordered her to go.

Mr. Ball: I'm saying he has tendered the $35.00, and we refused the tender because we do not believe the Court has the authority or the jurisdiction to order the plaintiff to go outside the state for examination.

Mr. Pearson: Would you also object to stating that plaintiff is refusing to comply?

Mr. Ball: Insofar as the order requires her to go outside the state of Arkansas for physical examination." As stated herein, this contention is without merit.

Accordingly, the trial court's order requiring appellant to submit to the medical examination before Dr. Richardson in Tulsa is affirmed. The court dismissed appellant's complaint because she refused to comply with this order. Inasmuch as this is a case of first impression, and the appeal seems to have been lodged for the purpose of obtaining a construction of Section 28-357, we feel that it would be unjust for appellant's complaint to be dismissed with prejudice. The cause is therefore remanded with directions to give appellant opportunity to comply with the May 12th order. Further refusal will justify dismissal of the complaint with prejudice.

WARD, ROBINSON and JOHNSON, JJ., dissent.

PAUL WARD, Associate Justice, Dissenting. As I see it, the decisive question is whether the trial court abused its discretion in ordering appellant to go to Tulsa for a physical examination. This question is, I think, properly presented by the record.

Ark. Stats. § 28-357 contemplates that the moving party must show at least the following: (a) There is a controversy over the physical condition of the other party and (b) give the name of the doctor selected to make the

examination. As stated by the majority, (b) was not complied with. In the case under consideration the said statute required that appellant be given notice of the hearing. But why give appellant notice if there is nothing she can do, and how could appellant intelligently object to a doctor when she did not even know his name?

The obvious answers to the above question forces me to the conclusion that the trial court was obligated to take into consideration appellant's side of the matter. In other words a situation was presented which called upon the court to exercise its discretion.

Appellant here was given a hearing, but only after the court had already named the doctor in Tulsa to make the examination. At this hearing it was developed that there was a doctor in Fayetteville who, by appellee's admission, was qualified in every respect. Appellee may have had some good reason why he did not want to use the Fayetteville doctor but he did not so indicate to the court. He chose rather to rely solely on the strict letter of the statute. If appellant had this right then, of course, the hearing was a vain and idle thing.

In view of the record in this case, sending appellant more than a 100 miles to a doctor in another state against her will when the same result could have been obtained by sending her to a doctor in her own town was, in my opinion, an arbitrary act, not based on reasonable discretion, and against the spirit of the statute.

Johnson, J., joins in this dissent.

Sam Robinson, Associate Justice. I dissent to that part of the opinion requiring Mrs. Reed to submit to an examination by the doctor at Tulsa. When the cause is dismissed without prejudice, the plaintiff has one year in which to file a new suit. When such new suit is filed, no orders made in the former suit are effective. The plaintiff should be allowed to start anew in every respect.