5-2835                                    362 S. W. 2d 4

Opinion delivered November 26, 1962.

*Mann & McCulloch,* for appellant.

*John N. Killough* and *Harold Sharpe,* for appellee.

CARLETON HARRIS, Chief Justice. Appellee, Holder D. Taylor, brought suit against appellant, on an accident insurance policy issued by appellant company, providing coverage for the loss of the sight of an eye through accidental means, when such loss resulted directly from an accident, and independent of other causes. The company denied liability, contending that appellee's loss of vision

in his eye was due to conditions other than an accident. The policy provided a benefit of $500.00 for the loss of one eye, but provided that the benefit should be decreased to $250.00, if claimant were over 65 years of age. Appellee, who was over 65, originally sued for $500.00, but amended his complaint during the trial, reducing his demand to $250.00. Following the completion of evidence, appellant refused to pay this latter amount. The jury returned a verdict in favor of Taylor in the sum of $250.00, and the court entered its judgment against appellant in the sum of $430.00, including the amount sued for, an attorney's fee in the amount of $150.00, and 12% penalty, together with interest at the rate of 6% from February 12, 1962, until paid. From such judgment, appellant brings this appeal. For reversal, the company relies upon four points, which we proceed to discuss, though the first three are so interrelated that they will be discussed *en masse*.

Appellant first argues that the trial court should have directed a verdict for it; in other words, it contends there was no substantial evidence that appellee lost the sight of his eye by accidental means. The evidence reflected that Taylor had been afflicted for a long number of years with ptosis of the right upper eye lid,[1] though appellee testified that the vision of that eye was as good as that of the other eye; that the eye had been ''drooped a little for 50 years, but it never bothered me, it never hurt at all''. He stated that the ''drooping'' never covered over ⅓ of the eye until after he suffered an accident on July 12, 1960. According to the witness, on that date, he went to the L'Anguille River bottoms with Walter Nelson for the purpose of cutting timber. Taylor stated that a bug flew into his eye and ''it hurt so bad I had to sit down on a log for an hour or so trying to get it out''. He testified that he finally managed, by constant rubbing and the use of a handkerchief, to take from his eye a small, hard shell, black bug. Taylor stated that he worked the balance of the day

---

[1] According to Dr. Thomas G. Price, physician of Wynne, Arkansas, ptosis is a "drooping or falling down" and applies to different organs. In this instance, the right eye lid "drooped" over the eye. According to Dr. J. Max Roy, a practicing physician of Forrest City, ptosis "mav affect the vision in the eye if it is completely covered."

and endeavored to work the next day, but, due to pain from the eye, left the woods, and went to see Dr. Price. The fellow worker, Nelson, corroborated the occurrence, testifying that the bug did fly into appellee's eye, ''and we stopped and worked a while there and finally got a little black bug out of his eye''. The physician prescribed medicine to be placed in the eye, but, according to Taylor, the swelling and pain grew worse, and in 4 or 5 weeks he realized that ''the sight was gone''. Taylor testified that he wrote the company, advising of the accident, and the loss of sight of his eye; a statement by Nelson, confirming the accident, was also enclosed. Dr. Price filled out the medical blank, showing that he had treated Taylor on three occasions, the treatment consisting of hot packs, antibiotics and sedation. Dr. Price did not state that appellee had lost the sight of his eye.[2] Taylor subsequently received a reply, wherein the company denied liability. From appellee's testimony: ''Well, I seen Dr. Myers in Memphis, and the best I recall, the company requested me to go to him to see if my eye was out; I did, and I went over there and he charged me $25.00 for the examination and he said it was completely out, my vision was gone.''[3] Dr. Myers (Roland H.), likewise, did not state in his report that the accident was responsible for the loss of vision, and, in fact, his report indicated that he did not consider the bug's flying into the eye to be the cause of the loss of vision.[4] Appellant attempted to offer this report in evidence, but upon objection, the court refused to permit it, since the doctor was not present to testify, and his deposition had not been taken. This ruling was correct. See *Shearman Concrete Pipe Company* v. *Wooldridge*, 218 Ark. 16, 234 S. W. 2d 382. In that case, we said, ''As to the injuries received by Earl Wooldridge and his wife and two daughters, there was offered the testimony

---

[2] Dr. Price also made a later report on November 4, 1960, in which he stated, "I am unable to state the amount of vision in the rt. eye before or after onset of his illness."

[3] This last was, of course, hearsay, but was not objected to.

[4] His report stated, "Examination of right eye did not show any evidence of scarring of the lids, conjunctiva or cornea as result of getting a bug in his eye on July 12, as would be expected if getting the bug into the eye was the cause of loss of vision." Neither this evidence, nor any other finding in the report of Dr. Myers, was viewed by the jury.

of the parties, the testimony of Dr. Eberle, and also the written report of Dr. Krock, who was not called as a witness. It is in regard to this written report of Dr. Krock that an error occurred which necessitates a reversal and a remanding as to the appellant, Bridges.

"Prior to the trial, the plaintiffs' attorneys had an agreement with the attorneys for Shearman and Daniels that such written report, signed by Dr. Krock, might be admitted in evidence without requiring him to be present. However, no such agreement was made by the attorneys for Bridges; and of course the written report — upon Bridges' objection—was inadmissible as to him, since it was 'hearsay'."

At the trial, Dr. Max Roy, a physician of Forrest City, who had examined Taylor a few days earlier, testified that Taylor had no vision in his eye, but that he could not say how, or when, appellee lost his sight. Counsel for Taylor then propounded the following hypothetical question:

"Assuming the plaintiff, Harold D. Taylor, had sight in his right eye on July 11, 1960 assuming further that on July 12, 1960, a hard shell bug flew into his eye while he was in the woods; assuming further that Mr. Taylor was unable to receive immediate medical attention and it took Mr. Taylor a half-hour to an hour, or more, to get the hard shell bug out of his eye, and assuming that during the process of getting the hard shell bug out of his eye, without any surgical instruments he was in severe pain; assuming infection resulted from the bug that got in his eye. Based upon your experience as a physician and your examination of Mr. Taylor, do you have an opinion, assuming all the facts I have related to be true, based on a reasonable medical certainty, whether Mr. Taylor's loss of sight in the right eye could have been caused by the hard shell bug flying into his right eye?"

The question was objected to by appellant on the ground that the interrogatory did not include the fact that Taylor had previously had eye trouble. When the objection was overruled, Roy answered that he had an opinion; it was

entirely possible that the loss of sight could have been caused by the bug flying into Taylor's right eye. There was no error in permitting the hypothetical question. In *Missouri-Pacific* v. *Hampton,* 195 Ark. 335, 112 S. W. 2d 428, we said:

"Appellants next contend that the court erred in permitting Dr. McGill to testify to the hypothetical question that in his opinion the death of deceased was caused by the injury. The appellants' attorney objected to the question and the court asked him on what ground. He stated: 'On the ground that he hasn't given the statement that the man never claimed to be injured or given any history of the injury to the doctors who treated him or made any complaint of that kind at all.' * * *, if appellants' counsel thought there were any facts omitted from the question which were essential to forming a conclusion, his remedy is to put those additional facts before the witness on cross-examination."

See, also, *Shaver* v. *Parsons Feed & Farm Supply, Inc.,* 230 Ark. 357, 322 S. W. 2d 690.

Summarizing, appellant asserts that appellee never did establish that the loss of vision was occasioned by the accident. It points out that the "claim for benefits" did not contain a statement to this effect by either physician who had examined Taylor; further, that Dr. Roy's testimony was only to the effect that the accident *could* have caused appellee's trouble. The foregoing evidence, says appellant, is not substantial. The company vigorously contends throughout its brief that appellee did not furnish proof of his claim, as contemplated by the contract, since he did not transmit to the company satisfactory medical proof that the accident caused the loss of sight.[5] It may well be that the proof was not satisfactory to appellant, but Taylor complied with provisions of the contract by sending in his claim, together with the statement of Dr. Price. For that matter, there is no requirement in the

---

[5] While testifying, Mr. Marcus Braun, president of the company, admitted that Taylor had lost the sight of his eye, but he contended that no proof had been furnished that he lost it as a result of the accident.

policy that he must furnish medical proof, and certainly he was not required to continue sending statements from a doctor until appellant was satisfied. Such a procedure could have continued indefinitely. The filing of the claim for benefits put appellant on notice that appellee was making a claim under his policy, and the company was entitled to make whatever investigation it desired or petition the court for an order for medical examination after the suit was filed. § 28-357, 1962 Replacement, Ark. Stats. See also *Reed* v. *Marley*, 230 Ark. 135, 321 S. W. 2d 193. If the law required that a claimant satisfy a company as to the validity of his claim before instituting suit, no lawsuits, of course, would ever be filed—and likely, many claims would remain unpaid.

The company strongly argues that the report of Dr. Myers should have been admitted, and from its brief, appellant evidently feels that the report constituted strong evidence in its behalf. We have previously cited authority that this report was inadmissible, but we should like to also point out that there was nothing to prevent appellant from either taking the deposition of Dr. Myers or having him present in the court room to testify. In such event, not only would the report have been admissible, but the jury would have had the benefit of his expert opinion.

Relative to Dr. Roy's testimony, we agreed that he did not definitely state that the accident caused the loss of vision, but under our decisions, this was not necessary. In *American Life Insurance Company* v. *Moore,* 216 Ark. 44, 223 S. W. 2d 1019, this court said,

"Appellant insists that Dr. Monroe's testimony is speculative, since he admitted the possibility that death was due to some other cause. But medicine, like the law, is not an exact science. If mathematical certainty were required, a surgeon would act at his peril in advising his patient to undergo an operation. The law does not compel adherence to a standard so precise."

After all, we do not know how Dr. Roy, since he did not see the occurrence, could have definitely stated that a bug flying into Taylor's eye caused appellee's loss of vision.

Probably numerous other foreign objects lodging in the eye would have produced this same effect. We think his testimony, *coupled with that of appellee and Nelson,* made a jury question. Here again, appellant states that up until the time Dr. Roy testified, no physician had even stated that the injury could have caused the loss; that it had no knowledge that this witness would so testify, and it again reiterates that such proof (still maintaining that it was not sufficient) should have been submitted to the company prior to litigation. However, the record reflects, that after all the evidence had been heard, including that of Dr. Roy, appellee again offered to settle his claim for $250.00, but was refused. Quite some space in the brief is devoted to the argument that even if substantial evidence was offered to the effect that the sight of the eye was lost by the accident, no evidence was offered that the loss of sight was irrecoverable. The policy provides that loss with regard to eyes means ''entire and irrecoverable loss of sight''. We find no merit in this contention. In the first place, the record does contain some evidence relative to this point. As previously pointed out, Taylor testified that Myers said that his eye ''was completely out, my vision was gone''. While, as also herein mentioned, this was hearsay evidence, it was not objected to, and, therefore, became competent evidence, and due to be considered by the jury. Counsel had some time earlier objected to appellee's reference to a statement purportedly made by the doctor, but this was not a continuing objection, and did not include the quoted testimony. In McCormick on Evidence (1954), we find,

''A failure to make a sufficient objection to evidence which is incompetent waives as we have seen any ground of complaint of the admission of the evidence. But it has another effect, equally important. If the evidence is received without objection, it becomes part of the evidence in the case, and is usable as proof to the extent of whatever rational persuasive power it may have. The fact that it was inadmissible does not prevent its use as proof so far as it has probative value. Such incompetent evidence, unobjected to, may be relied on in argument, and alone or

in part may support a verdict or finding. This principle is almost universally accepted, and it applies to any ground of incompetency under the exclusionary rules.''

Our own court has so held on numerous occasions. Mr. Braun, President of New Empire Insurance Company, while testifying, was asked by the company's counsel, ''Have you received anything (referring to statements) that he suffered irrecoverable complete loss of sight other than what Dr. Roy said this morning?'' Answer, ''Yes, Sir, we have.'' For that matter, on September 27, 1960, Mr. Braun, by letter directed to Mr. Taylor, in which the claim was rejected, stated, ''Should you eventually lose the sight of your eye as a result of this accident, please let us know, and we shall be glad to reconsider your claim.'' It will be noted that the word ''irrecoverable'' is not used in the letter. Be that as it may, we hold there was sufficient evidence in the record for the jury to find that the loss of sight was irrecoverable and there is not one line of evidence to the contrary. In accordance with this discussion, we are of the view that evidence of a substantial nature was offered justifying the jury in reaching its verdict.

Appellant complains that the court erred in not giving certain instructions that it offered. Appellant's Requested Instruction No. 1 provides as follows:

''You are instructed that the burden of proof in this case is on the plaintiff, Holder D. Taylor, to prove by a preponderance of the evidence the allegations in his complaint. And in this connection, plaintiff must prove that he suffered the complete and irrecoverable loss of sight in his eye due solely to bodily injury through accidental means. Said loss of sight must have resulted from said accidental means directly and independently of all other causes. If plaintiff's loss of sight (if any) was due to any means other than purely accidental, then your verdict must be for the defendant, New Empire Insurance Company, and you will answer the interrogatories propounded by the Court accordingly.''

Appellant points out that the following provisions are not covered by any other instructions given by the court:

"* * * plaintiff must prove that he suffered the complete and irrecoverable loss of sight in his eye due solely to bodily injury through accidental means. Said loss of sight must have resulted from said accidental means *directly and independently of all other causes.*"[6]

Of course, appellant must offer a correct instruction, or else he cannot be heard to complain. The instruction offered is not correct, in that the italicized language did not properly state the law. In *Fidelity Reserve Ins. Co.* v. *English,* 226 Ark. 210, 288 S. W. 2d 951, this court said,

"It is contended that the appellee's disability did not result solely from accidental means, within the language quoted above.[7] The undisputed facts are that the appellee accidentally stepped on a roofing tack, gangrene developed despite medical attention, and the afflicted leg had to be amputated below the knee. The appellant's argument is based on proof that the appellee, a woman past sixty, suffers from arteriosclerosis, without which the wound would not have become gangrenous. In construing language like that appearing in this policy we have uniformly held that the injury is covered if the accident precipitates the disability, even though the condition would not have occurred without the contributing effect of a preexisting disease."

Several cases are cited in support of this holding.

Appellant's Requested Instruction No. 2 defined the term, "accidental". We think the court's statement of the case and other instructions sufficiently covered this point. Appellant's Requested Instruction No. 3 dealt with matters already covered in this opinion, wherein we have held contrary to appellant's view.

Finding no reversible error, the judgment is affirmed.

Counsel for appellee has moved for an additional attorney's fee because of services rendered on this appeal.

---

[6] Emphasis supplied.

[7] The policy provided benefits for loss "resulting solely from bodily injuries effected directly and independently of all other causes through accidental means."

We are of the opinion that the motion should be granted, and the fee is fixed at $100.00.

It is so ordered.