Edward KINNEY *v.* STATE of Arkansas

CR 93-762                                            868 S.W.2d 463

Supreme Court of Arkansas
Opinion delivered January 10, 1994

---

482

*Joe Kelly Hardin*, for appellant.

*Winston Bryant*, Att'y Gen., by: *Sandy Moll*, Asst. Att'y Gen., for appellee.

DONALD L. CORBIN, Justice. Appellant, Edward Kinney, was convicted by a Saline Circuit Court jury for the murder and rape of a seven-month-old child. Appellant was sentenced to life imprisonment for first degree murder and forty years imprisonment for rape, the sentences to run consecutively. It is from these judgments of conviction that appellant appeals. Appellant relies on three points for reversal. Appellant argues the trial court erred in (1) allowing pictures of another child's injured penis to be shown to the jury, (2) allowing the state medical examiner to testify regarding possible causes of death, and (3) denying appellant's motion for directed verdict alleging insufficiency of the evidence to sustain the first degree murder conviction. We find no merit and affirm the judgments of conviction.

"[W]e have determined that preservation of an appellant's right to freedom from double jeopardy requires a review of the sufficiency of the evidence prior to a review of any asserted trial errors." *Smith* v. *State*, 310 Ark. 247, 250, 837 S.W.2d 279, 281 (1992). Thus, we consider the challenge to sufficiency of the evidence first.

The test for determining the sufficiency of the evidence is whether there is substantial evidence to support the verdict. *Chism* v. *State*, 312 Ark. 559, 853 S.W.2d 255 (1993). On appeal, the evidence is reviewed in the light most favorable to appellee. *Id.* The conviction will be sustained if the evidence is of sufficient force and character to compel reasonable minds to reach a conclusion and must pass beyond suspicion and conjecture. *Id.*

The crime of first degree murder is defined in Ark. Code Ann. § 5-10-102(a)(3) (Supp. 1993):

(a) A person commits murder in the first degree if:

. . . .

(3) He knowingly causes the death of a person fourteen (14) years of age or younger at the time the murder was committed.

The evidence, as viewed in the light most favorable to appellee, reveals that the victim, a seven-month-old boy, died on May 11, 1992, due to suffocation after being in the care of appellant. An

investigator presented, without objection, a signed statement of appellant taken June 23, 1992:

> The day [the child] died I was mad at [my wife] and also mad at him for crying and screaming. I put him on my chest and held him there to muffle his crying for around 3 to 5 min[utes]. I did this too long and too hard. He stopped wiggling for a pretty good while; so I put him in his crib and noticed he was a little pale. I went back in a little while later and noticed he was yellow so I started CPR. After doing this for a while I grabbed him up and went to Karla's, where she dialed 911. I feel that I unintentionally caused the death of [the child].

The mother testified that she was the last person, other than appellant, to handle the child the night before he died and did not remember any abnormalities to the child's genitals. A neighbor testified that she was the child's babysitter and saw the child nearly every day. She testified that she saw the child the day before he died, on Sunday, May 10, 1992. She testified she had known appellant since he had moved in with the child's mother in February. She stated that the next day, May 11, 1992, at about 8:20 in the morning she heard the child screaming next door for two or three minutes. At about 8:50 appellant came to her home, slung the door open, and threw the child at her saying he could not breathe. She attempted to perform CPR and called 911.

The maternal grandmother testified that she kept and bathed the child the Sunday before he died. She noticed no rash or abnormality in the genital area. The only noticeable problem to the grandmother was that the baby was congested for which the family had been giving him cough syrup. An emergency medical technician testified that after they retrieved the child from the neighbor's home he was transported to Saline Memorial Hospital.

The child was pronounced dead at the hospital. The evidence reflects that contusions and bruises were first noticed on the child's penis at the hospital by one of the emergency medical technicians. This was confirmed by Dr. Archer, the emergency room physician, who stated that none of the emergency procedures would have caused injuries to the genital area. The physician who performed the autopsy, Dr. Sturner, testified that the injuries to the

child's penis were less than 24 hours old and were consistent with a bite. This was corroborated by the testimony of Drs. Froede and Martindale. A forensic odontologist, Dr. Campbell, used a demonstrative picture of another child over appellant's objection and testified that the child's injuries were human bites.

One witness, a dentist, opined the injuries were not human bite marks. This dentist testified he had never reviewed a case for the state crime lab which involved bite marks to the genital area. The evidence further reveals that appellant made a statement to investigators that about two months before the child's death he had masturbated the child out of curiosity to see if the child's penis would become erect. Appellant denied causing any injuries to the child's penis.

Dr. Sturner, who performed the autopsy, testified that the cause of death was uncertain but did express an opinion as to the possible cause of death, traumatic compression asphyxia (suffocation). Dr. Froede corroborated this testimony by opining to a reasonable degree of medical certainty that the cause of death was asphyxia due to compression of the chest.

The foregoing evidence is substantial evidence and supports the jury's verdict. The trial court did not err in denying appellant's motion for directed verdict on the charge of first degree murder.

Appellant's second argument for reversal relates to the trial court's admission into evidence of a photograph of another child's penis which exhibited bite marks. This picture was shown to the jury by Dr. Campbell, a forensic odontologist, to demonstrate bite marks on a penis. The jury was instructed that the pictures were from another case and not the present victim. Appellant claims the picture was irrelevant and was used to inflame the jury. Further, appellant alleges that if there were any relevancy to this picture, it is outweighed by unfair prejudice under Ark. R. Evid. 403.

The trial judge, upon objection from appellant, took a fifteen minute recess to hear in chambers arguments regarding this photograph. Dr. Campbell explained to the judge that he used his previous experience, the photograph in question being one of those cases, to determine the origin of bite marks. The questioned photograph was known to be that of bite marks on an infant's penis

because the perpetrator in that case admitted to doing so. The trial judge admitted the photograph for demonstrative purposes only, and the jury was informed that this photograph was not of the victim.

■■ The admissibility of photographs is a matter within the sound discretion of the trial court, and we do not reverse its rulings unless it abused its discretion. *Crow* v. *State*, 306 Ark. 411, 814 S.W.2d 909 (1991). "Even inflammatory photographs are admissible if they tend to shed light on an issue, enable a witness to better describe the objects portrayed, or enable the jury to better understand the testimony." *Hickson* v. *State*, 312 Ark. 171, 175, 847 S.W.2d 691, 694 (1993). Interestingly appellant did not object to the admission and showing of several color photographs of the naked victim. The disputed photograph was allowed and explained to be from another case. Given the trial court's consideration of the photograph and the purposes for which it was used, we cannot say the trial court abused its discretion. Accordingly, we affirm the trial court's admission of the photograph into evidence.

Lastly appellant argues the State Medical Examiner, Dr. Sturner, should not have been allowed to testify regarding the possible causes of death asserting it was irrelevant, speculative, and without probative value. The autopsy report stated the cause of death was undetermined. However, after exploring and excluding sudden infant death syndrome, chronic infection, congenital defects, and metabolic disease, Dr. Sturner testified to a reasonable degree of medical certainty that the cause of death was consistent with traumatic compression asphyxia. The doctor came to this conclusion after being presented with the facts surrounding the morning of the child's death as admitted by appellant and coupling this with the medical findings of the autopsy.

■ The trial court, in overruling appellant's objection, stated that the jury could weigh the testimony and that it was probative to the state's theory. We deem the explanation of possible causes to be, at worst, harmless error. Medicine, like law, is an inexact science, and testimony is not rendered speculative merely because the cause of death could not be stated with mathematical certainty. *See American Life Ins. Co.* v. *Moore*, 216 Ark. 44, 223 S.W.2d 1019 (1949). We cannot say the trial court abused

its discretion in allowing the doctor to testify as to other possible causes of death.

Pursuant to Ark. R. Sup. Ct. 4-3(h), appellee has made certain that all objections decided adversely to appellant have been abstracted by the parties. We have determined that no issues of prejudicial error exist.

Affirmed.