THE AETNA CASUALTY & SURETY COMPANY
v. MURL PILCHER ET AL

5-4390                                               424 S. W. 2d 181

Opinion delivered February 5, 1968
[Rehearing denied March 11, 1968.]

*W. A. Eldredge Jr.*, for appellant.

*Paul Rawlings* and *Fenton Stanley*, for appellees.

*Thomas J. Bonner*, Amicus Curiae, Arkansas Hospital Association.

PAUL WARD, Justice. Very briefly stated, this litigation pertains to the question of liability for a germ infection incident to an operation on the leg of Gary Pilcher, a fourteen-year-old boy.

On September 20, 1962 Gary was admitted to St. Vincent Infirmary, and on the following day the opera-

tion was performed, necessitating an incision on his leg. He was discharged eight days later and returned to his home. About two months later Gary was admitted to a hospital in Malvern because of fever and a "reddened throat" where his condition was diagnosed as a Streptococcal Respiratory Infection, and was discharged on December 10, 1962. Four days later Gary was examined in Little Rock by Dr. Christian, and no objective sign of infection in his leg was found. On January 25, 1963 Gary was reexamined by Dr. Christian and for the first time it was discovered he had a bone infection.

It is stipulated that "St. Vincent Infirmary had in full force and effect a policy of liability insurance with the Aetna Casualty & Surety Company". St. Vincent is immune from liability but voluntarily carries insurance.

A complaint was filed by Gary (by his father as Next Friend) and by his parents (appellees here) against Aetna (appellant here), containing, in substance, the material allegations set out below.

(a) Gary has suffered injury as previously mentioned because of negligence on the part of St. Vincent's employees in these ways:

  1. They failed to keep those areas of the hospital where Gary was during and after the operation free of infecting organisms.

  2. They failed to warn Gary of these organisms.

  3. They failed to discover these organisms in the hospital.

  4. They failed to discover Gary had the infecting organisms.

(b) The acts of negligence set out above were the proximate cause of Gary's infection and the resulting damage.

(c) As a result of the infection and Gary's injury, his parents have incurred, and will incur, medical and hospital expenses and have been, and will be, deprived of his services—in the total sum of $15,000.

Appellant entered a general denial, and also moved for a directed verdict when all evidence was introduced, which motion was denied. A jury trial resulted in a judgment of $18,000 for Gary and $2,000 for his parents.

On appeal appellant waives any reversible error that may have occurred during the trial, and seeks a reversal of the judgments and a dismissal of the complaint on the ground that there is no substantial evidence to support the jury verdicts.

The record in this case is voluminous, and the excellent briefs discuss at length several aspects of the case but, after careful consideration, we have concluded that there is only one pivotal issue. That issue is:

Is there substantial evidence to support a jury finding that Gary's injury was the result of negligence on the part of the employees of St. Vincent Infirmary?

At the outset we should say that we consider it highly speculative as to when the germ entered Gary's system. For example, from the proof offered, it is just as possible that he contracted the germ at Malvern two months after the operation as that the germ entered the body at the time of the operation. However, for the purpose of this opinion only, it may be conceded that:

(a) At the time and in the process of the operation Gary was infected by a germ technically termed as "Hemolytic Staphylococcus Aureus. Coagulase Negative, Penicillin Sensative." (Hereafter we may refer to this germ as "staph negative.") There is also a similar germ often referred to in the record which may be referred to as "staph positive."

(b)   Both of these germs are prevalent in hospitals and were, and are very hard to control or eradicate in all hospitals. The record of control by St. Vincent is as good as the average in hospitals locally and nationally.

(c)   There is no direct or positive testimony that Gary's infection by the germ was the result of negligence on the part of St. Vincent.

If, therefore, the jury verdict is to be affirmed we must find, based on the record hereafter examined, that the negligence of St. Vincent was the proximate cause of Gary's infection. In this approach it may be conceded, for the purpose of this opinion, that the record reveals substantial evidence from which the jury could have found that St. Vincent was negligent in failing, in some respects not vital to the issue here, to provide better protection generally against germ infection.

Referring to appellees' four allegations of negligence on the part of St. Vincent as being the proximate cause of Gary's injury, we feel it sufficient to summarily dispose of the last three.

2.   We cannot agree that St. Vincent's failure to warn Gary of these organisms was the cause of his injury. If he had been warned it is not reasonable to suppose he would have refused the operation or that he could have done anything about it. Also, the doctor knew about them and if he did not use reasonable care to guard against them, then he and not St. Vincent was negligent.

3.   St. Vincent did discover the germs in the hospital and made efforts to guard against them.

4.   It was not the duty of St. Vincent to discover Gary had received an infection germ as a result of the operation. Again, this was the duty of his doctor. Moreover, the undisputed testimony reveals that the infec-

tion cannot be discovered until later when the result of the germ is manifested—in this instance it was not discovered for several weeks.

1. We now look, in more detail, at the contention of appellees that St. Vincent's negligence in failing to keep the operation room and surgical instruments free from infecting germs was the proximate cause of Gary's injury. Set out below is a summary of the testimony relied on by appellees.

*Dr. Orr.* If you touch a contaminated piece of equipment the hands become contaminated, if the blade (or plate) inserted in the leg had this germ on them that could have caused the infection—they are sterilized by St. Vincent; frequently the infection comes from contact with hospital personnel. He concluded that the post-op infections were the result of a break in cleaning technique and had been corrected.

*Dr. White* testified that a chemical company claimed to have a disinfectant which will kill these germs; he *thinks* the infection here occurred during surgery because of germs on the plate, screws, or instruments, but is aware of other possibilities such as blood-borne organism.

*Dr. Christian,* who performed the operation, stated that *"probably* the infection, the germ was introduced *probably* at the time of surgery;" and that "if some instrument was unsterile it could have introduced it into the bone," but that there were other ways it could have happened.

*Dr. Burger* stated that when a person was being operated on he was more likely to be infected, and that "we try to keep all infections to a minimum and we try to be a little more careful in surgery . . . ."

*Mr. Leslie*, in charge of housekeeping for St. Vincent,' stated they tried to be more careful in combating the germs in the surgery area than in other areas of the hospital.

*Dr. Lee* corroborated the testimony of Dr. Burger and Mr. Leslie.

Notwithstanding the testimony above set out and conceding that St. Vincent might have done more than it did do to eradicate or contain the germ, we are unable to hold, in view of what we later point out, that a jury question has been made—as to proximate cause.

Dr. Burger testified that even a mask on the face of the operating doctor could not eliminate the bacteria danger. Dr. Christian, who performed the operation, testified that in spite of the finest surgical technique in the operating room and the hospital this germ cannot be eliminated; that this germ infection happens in approximately 5% of all operations; that it is impossible for medical science to guarantee against this infection; that it is impossible to keep bacteria out of the air; that it is possible Gary or any other person, including himself, could have brought this particular germ into the operating room.

In view of the undisputed testimony that this germ could have entered Gary in so many ways and from so many sources, and in view of the unchallenged difficulty in controlling it, we must conclude that the jury verdict must have been based on speculation and not on substantial evidence. This conclusion is confirmed by the fact that there is no *expert* testimony showing St. Vincent was negligent. In many cases the courts have held, in a case of this kind, that expert testimony has great weight where there is no direct proof to the contrary.

In *Durfee* v. *Dorr*, 131 Ark. 369, 199 S. W. 376, we find this pertinent statement:

"We think this evidence was competent, as it related to a subject upon which the average juror would have no information or experience upon which he would be in position to formulate an intelligent conclusion *unless he based his conclusion upon the opinion of one qualified to speak as an expert.*" (Emphasis added.)

In *Gray* v. *McDermott*, 188 Ark. 1, S. W. 2d 94, we said:

"*(these) were questions requiring scientific knowledge to determine.* It cannot and should not be left to a jury to speculate whether or not the experts in the practice of their profession have pursued the proper course of procedure." (Emphasis added.)

In the case of *Thompson* v. *Methodist Hospital,* (Tenn.) 367 S. W. 2d 134, a similar issue was involved and the Court made this statement:

"As heretofore noted, the undisputed evidence is that these infections occur in and out of hospitals, and in the absence of negligence. If, under the evidence in this case the Methodist Hospital is to be held liable for the infection contracted by the Thompson baby and transmitted by him to his parents, then few hospitals could reasonably incur the financial risks of having born within its walls a baby."

It is therefore our conclusion that there is no substantial evidence here to support the jury verdict and the judgment based thereon. The judgment is reversed and the cause of action is dismissed.

GEORGE ROSE SMITH and JONES, JJ., dissent.