MYRL FANNING v. HEMBREE OIL COMPANY, INC.

5-4780                                   434 S.W. 2d 822

Opinion Delivered December 16, 1968

*Pearson & Pearson* and *Walter R. Niblock* for appellant.

*Putman, Davis & Bassett* for appellees.

LYLE BROWN, Justice. This is an appeal from a judgment on a promissory note. The trial court, sitting as a jury, awarded judgment to Hembree Oil Company, Inc., against Myrl Fanning, holding that Fanning signed the note in his personal capacity and not in his capacity as an officer of Razorback Asphalt Co., Inc. The single purpose of the appeal is to test the sufficiency of the evidence to support the verdict.

Several pertinent facts are undisputed. Roy Hembree operated the Hembree Oil Co., Inc., engaging in the oil and gas business. Myrl Fanning and Darrell Winters were incorporated as Razorback Asphalt Co., Inc. Winters was president and Fanning was secretary. They were engaged in the selling and laying of asphalt. Razorback, under prior ownership, had run into financial difficulties and sold the business to Winters and Fanning. At that time, Razorback owed a small balance to Hembree for merchandise. The new owners continued to do business with Hembree. By July 1966, the account exceeded $2000. At that time, Hembree went to Winters and Fanning and demanded a personal note as security for the account as a condition precedent to continued business relations. A note was then and there executed. Darrell Winters signed on the top signature line; and, just above his signature, Razorback's secretary typed "Razorback Asphalt Co., Inc." Myrl Fanning signed on the second signature line. No representative capacity of the signers was placed on the note.

Hembree being the successful party, we examine his version of the execution of the note in search of substantial evidence to support the verdict. Because of an outstanding account, Hembree went to see Fanning

when Fanning and Winters bought Razorback; it was then agreed that when Hembree extended credit to Razorback, he would look to Fanning for payment; and Hembree knew that Winters had no financial rating. Hembree was not aware that Razorback was a corporation. (The letterheads and billings which are in the record and which came into Hembree's hands in the regular course of business styled the company "Razorback Asphalt Co."; and Razorback assigned an account receivable to Hembree, and that assignment was not executed in the name of Razorback, rather it was over the signatures of Winters and Fanning.) When Hembree went to see Fanning and obtained the note in litigation, he asked for a personal note from Fanning; the latter protested signing in his personal capacity; but, nevertheless, he did sign the note. Hembree wanted a note signed personally by Fanning because Hembree felt the signature of Winters would not add anything to Hembree's security; and Hembree did not know the name, "Razorback Asphalt Co., Inc.," had been inserted in the note. At the time the note was signed and delivered, Hembree gave this account:

"THE COURT: State what was said, the conversation.

A. Well, he just didn't want to sign it. I don't know, he had always promised me what he would do about paying these bills, but then he just didn't want to sign it then . . .

Q. Was there anything said then by Mr. Fanning about who was to pay that note?

A. He said, 'I will see to it that you get your money.' "

After Hembree obtained the note, he extended credit to Razorback on open account and in substantial amount.

Fanning's version of the execution of the note was extremely opposite that of Hembree. He was positive that Hembree asked for a personal note "and I told him I would not do that, that I would sign it as a corporation officer only." He was corroborated by Winters and by Fanning's secretary.

The single point for reversal is that the judgment in favor of Hembree "is not supported by a preponderance of the evidence". Determining the preponderance of the evidence is in the province of the trial court. On appeal, we examine the evidence in light of its substantial nature. In doing so, we give the jury finding (or court sitting as a jury) the most favorable conclusion that may be arrived at to support the verdict, as was said in *New York Life Ins. Co.* v. *Weeks*, 201 Ark. 1160, 148 S.W. 2d 330 (1941). We do not disturb the finding of fact merely because of contradictions in the testimony and circumstances; we must be able to say there is no reasonable probability that the incident occurred as found by the trial court sitting as a jury. *Lumbermens Mutual Ins. Co.* v. *Cooper*, 245 Ark. 81, 431 S.W. 2d 256 (1968).

As we interpret the Uniform Commercial Code, the burden was on Fanning to affirmatively show there was an understanding between him and Hembree that Fanning was signing the note in a representative capacity.

"Unless the instrument clearly indicates that a signature is made in some other capacity it is an indorsement." Ark. Stat. Ann. § 85-3-402 (Add. 1961).

. . .

"(2) An authorized representative who signs his own name to an instrument

(a) [not here applicable];

(b) except as otherwise established between the immediate parties, is personally obligated if the instrument names the person represented but does not show that the representative signed in a representative capacity, or if the instrument does not name the person represented but does show that the representative signed in a representative capacity." Ark. Stat. Ann. § 85-3-403 (Add 1961).

In light of the quoted statutes we think the burden was on Fanning to affirmatively show an understanding between him and Hembree that Fanning would not be personally liable on the note. *Leahy, Ex'x.* v. *McManus*, 206 A. 2d 688 (Md. 1965). In that case the note bore the stamped name of the corporation; immediately below the stamped name appeared the signatures of McManus and Delauney, without designation of representative capacity. McManus defended on the ground that he signed solely as an officer of the corporation. The court held McManus to be prima facie liable. The case further states that, as between the parties, McManus would not be liable *if he affirmatively showed an understanding* that he was not to be personally liable.

In addition to the evidence, the trial court made mention of some significant circumstances: A note which bound only Razorback would have been of little value considering its financial condition; after the note was signed, Hembree extended substantial credit to Razorback; Hembree had little education and was not a good reader; "Mr. Fanning had a secretary, typewriter, had charge of making out the note and he was perfectly capable of putting president, secretary, or anything he wanted in it, so I can't ignore that fact."

Viewing the evidence and circumstances in light of the law and the circumstances we have recited, we find there was substantial evidence to support the verdict.

Affirmed.