JOE MALLETT, ET AL v. SARA BRANNON, ET AL

5-4805                                        439 S.W. 2d 32

Opinion Delivered April 7, 1969

*Douglas Bradley* for appellant.

*Gordon, Gordon & Eddy* for appellees.

CARLETON HARRIS, Chief Justice.    This is the second appeal of this case.    In *Mallett, et al v. Brannon,*

*et al*, 243 Ark. 898, 423 S.W. 2d 880, a judgment for appellee was reversed when this court held that the trial court had abused its discretion in denying appellants' motion to require a further medical examination of appellee Sara Brannon,[1] appellee's doctor having failed to mention in his report findings relative to nerve damage. On this last trial, the jury again found for appellee, and fixed her damages at $38,000.00. From the judgment so entered, Joe Mallett, a driver for Save-A-Stop, Inc., together with said employer, brings this appeal.

On the first appeal, the question of appellants' liability for alleged negligence was at issue, but that point is not raised in the present instance. Rather, it is asserted that the trial court abused its discretion by not allowing a continuance to permit appellants to take the discovery deposition of Dr. Joe Lester; that there was no substantial evidence of permanent injury, and the court erred in submitting this issue to the jury; and that the judgment was excessive.

Following the reversal, appellants took the evidence deposition of Dr. William H. Jordan, a neurologist of Little Rock, and the evidence deposition of Dr. John H. Adametz, a neurosurgeon of Little Rock; thereafter, Mrs. Brannon was, at the request of appellants, examined by Dr. Larry Mahon, an orthopedic surgeon of Little Rock, and his evidence deposition was taken. This was done on May 21, 1968. Following the taking of this deposition, counsel for appellee, who stated that he did not receive a copy of the deposition until May 25, felt that he also wanted Mrs. Brannon examined by an orthopedic surgeon, and arrangements were made to

---

[1]Actually, the suit was filed by Mrs. Brannon and her husband, but Mr. Brannon received a judgment for $2,000.00 at the first trial, which was paid, and he is no longer a party to the suit. Accordingly, there is only one appellee, Mrs. Brannon, involved in this litigation at the present time.

have this examination made by Dr. Joe K. Lester, an orthopedic surgeon of North Little Rock. This examination was conducted on Tuesday, May 28, and on Wednesday, the 29th, appellee's counsel notified appellants' counsel that Dr. Lester had examined Mrs. Brannon, and that a copy of the report of the examination would be sent. On Friday, May 31, a copy of Dr. Lester's report was delivered to a Morrilton attorney, associated with appellants' chief counsel, and the latter received a copy of the report on Saturday, June 1. The trial had been previously set for Monday, June 3, and appellants' attorney filed a motion asking that the case be continued until he had the opportunity to take the discovery deposition of Dr. Lester. In his report, Dr. Lester said:

"X-rays were taken of the cervical spine including AP, lateral, oblique and open mouth projections. Films were also obtained of the lumbar spine. Oblique films reveal some evidence of foraminal encroachment on the left between C5 and C6 and to a lesser degree between C4 and C5. The foraminal encroachment is associated with the fifth cervical vertebra. Oblique films reveal straightening of the cervical lordotic curve. There is definite straightening and a tendency toward reversal of the normal cervical lordotic curve in the neutral lateral view between C4 and C5."

Appellant says that this condition did not appear on the x-rays taken by his expert witnesses, and he desired the opportunity to interrogate Dr. Lester by discovery deposition,[2] and to have the x-rays examined by an expert x-ray technician. This motion was denied, and appellants contend that this action on the part of the court was an abuse of discretion. We do not agree, for it is our view that sufficient expert opinion had al-

---

[2] On trial, Dr. Lester testified that Mrs. Brannon sustained an injury which occurs in rear end automobile accidents called a hyperextension flexion injury. His testimony will be subsequently discussed in more detail.

ready been obtained from other sources, and there was no urgent need that this discovery deposition be taken.

Between the first and second trials, appellee had presented herself for examination, at the request of appellants, to Dr. Jordan, neurologist, and Dr. Mahon, an orthopedic suregon.[3] In addition, at the trial itself, appellants offered the deposition of Dr. Adametz, the neurosurgeon, who had examined Mrs. Brannon at the request of appellee's family physician, Dr. Hickey. All three of these doctors testified that they could find nothing in their examination to account for appellee's continued alleged disability. Dr. Adametz stated:

"I was unable to find anything on her detailed neurological examination to account for this patient's continued alleged disability and I feel that she is definitely exaggerating her symptomatology during the course of my examination. I was convinced that she was not being completely honest with me, especially concerning her sensory examination, but was obviously exaggerating this. I cannot help to feel that she was magnifying all of her symptoms and definitely is alleging disability for which I could find no actual objective clinical neurological elements."

Dr. Jordan found no sign of permanent injury in the neurological area, though he did state that her complaints were consistent with a cervical spine injury.[4]

Dr. Mahon, the orthopedic surgeon, testified by deposition, and mentioned in detail his findings. X-rays

---

[3]Prior to the first trial, Mrs. Brannon had been examined by Dr. J. J. Magie, a Morrilton physician, and it was his findings that prompted this court to hold that appellant was entitled to have appellee examined by a neurologist. For a full summary of Dr. Magie's findings, see Mallett v. Brannon, supra.

[4]The doctor's actual examination, however, was limited to determination of whether there was any nerve damage.

were taken by the doctor of the cervical spine in the AP, lateral, oblique, and flexion-extension views, and all were within normal limits. He stated that her complaints were exaggerated, and he could find no evidence of permanent injury. Though he said that he could not rule out the possibility of disk protrusion, he found no evidence of it. We will not set out the testimony of these three experts in full, since there is no occasion to do so, but each supports the conclusion reached with pertinent facts, and it is thus clear that appellant was able to present substantial testimony that Mrs. Brannon's complaints were not attributable to, nor the result of, negligence of appellants.

The point is that appellants were not caught, so to speak, "empty handed," *i.e.*, they presented evidence contrary to Lester's findings. Our statutes relating to discovery depositions, and physical and mental examinations, Ark. Stat. Ann. §§ 28-348 and 28-357 (Repl. 1962), respectively, are taken practically verbatim from Rules 26 and 35 of the Federal Rules of Civil Procedure. This question is discussed in 23 Am. Jur. 2d, § 199, p. 556. After pointing out that, in federal cases, pretrial deposition discovery of the opposing party's expert opinion may, in a proper case, be authorized, it is then stated:

> "* * * Such discovery ordinarily will not be permitted except in instances of extreme need thereof by the examining party and inability on his part to obtain expert opinion on the same matter from other sources. Such a pretrial discovery, it is indicated, will not be permitted except under special circumstances deemed to constitute good cause for allowing it, and a similar view has been taken in cases involving state counterparts to the federal rules."

Similar language is used in 86 A.L.R. 2d 145. In *United Airlines, Inc.* v. *United States*, 26 F.R.D. 213 (1960), the court emphasized the underlying reason for the rule:

"Discovery of opinions or conclusions, however, furthers these goals in only a tangential manner, for while a witness to a physical occurrence is relatively unique, and, therefore, relatively indispensable, opinions are obtainable from many sources. This leads to the notion that since the party seeking discovery can obtain opinions without difficulty elsewhere, there is usually little need for him to seek them from experts associated with his adversary."

Appellants' contention is without merit.

It is next urged that there was no substantial evidence of permanent injury to justify submitting this issue to the jury. We are unable to agree with this assertion. Even though we might feel that the strongest evidence on this issue was offered by appellants, this fact, of course, would not justify a reversal, for we are only permitted under the law to determine whether there was any substantial evidence to support the view of the prevailing litigant. In most instances there is substantial evidence on both sides, and we consider that to be likewise true in the case before us.

Briefly, Dr. Thomas H. Hickey of Morrilton, Mrs. Brannon's doctor for a long number of years, testified that he found a straightening of the normal curve of the cervical spine, which usually indicates injury to that portion of the spine, and he was of the opinion that she had received a severe sprain of the cervical and dorsal spine. He testified that he found severe contusions to the anterior chest wall, and multiple contusions and abrasions. The doctor testified that she still had pain and soreness in her neck, and pain, soreness, and swelling in the left upper extremity; also some flebitis in the left upper extremity, which the witness stated could be caused by trauma. Dr. Hickey said that he had been her physician for many years, and she had never made complaints of pain in the areas examined, prior to the accident. It was his view that soft tissue damage was

causing the pain radiating from the neck into the left shoulder, the pain in the back of the neck, and the feeling of numbness and weakness in the left arm, about which Mrs. Brannon continued to complain. He said that this type of injury was very painful, and that usually arthritis follows. It was his view that appellee would continue to have pain and suffering, and her injury would be permanent. The doctor testified to a 15% permanent partial disability as a result of injuries received when her automobile was struck from the rear by the tractor trailer.

Dr. Lester found a 10° restriction in the left lateral motion of the neck, and some curvature present in the low back, with slight accentuation of the lumbosacral angle. Further, there was a slight loss of sensation on the outside of the left foot, being the area supplied by the sural nerve, which emerges from the last disk, this being (according to the witness) evidence of injury to the fifth lumbar vertebra. The doctor said that the x-rays reflected she had a straightening and a tendency toward reversal of the normal cervical curve, and on the oblique view, there was evidence of change on the left, which was compatible with the type of injury that she sustained. He found a roughness in the area above and below the fourth vertebra on the left, and there was reflected some small early bone formation compatible with injuries occurring from this kind of accident. He was of the opinion that Mrs. Brannon would need to continue using traction at home on her neck, and back exercises, and he said that she probably has some permanent disability. The doctor was reluctant to set a degree of permanent disability after one examination, but it was his view that findings reflected enough objective x-ray evidence to support Dr. Hickey's opinion.

Of course, though Dr. Hickey was not a specialist, there is significance in the fact that this doctor had known appellee for years, and had treated her prior to the injury. We conclude that there was sufficient evi-

dence of permanent injury to justify the submission of this issue to the jury.

Finally, it is argued that the verdict is excessive.

Mrs. Brannon was 32 years of age at the time of this trial, and had a life expectancy of 44½ years. While she and her husband lived in California for a period of six years, she managed a trailer park, and on moving to Conway County, worked part time at a drug store. She said that she had not worked for about four years, because of her school age children. Appellee related her difficulties following the accident, stating that she does not have her former ability to work in her garden, cannot perform many household functions, cannot drive an automobile for more than 30 minutes at a time, and has difficulty in holding objects in her left hand. She complained of severe headaches, which she said still continued, though not as bad as formerly, and she said that the pain in her neck, though still present, seems to be better. However, Mrs. Brannon stated that the pain in her low back and left leg was worse than it was a year earlier, and that her left arm tingles as though asleep; the arm hurts from her elbow to the shoulder when she is working, and frequently swells and stays sore for two or three days. According to the witness, she had difficulty in sleeping or resting for a long period of time. Of course, appellee's evidence shows that she has a 15% permanent partial disability, and testimony of her doctors was to the effect that she will continue to suffer pain. Dr. Hickey was also of the view that she will develop arthritis. According to the evidence, she had suffered pain and mental anguish for close to 27 months before trial, and of course, future pain and anguish is also compensable. Though she has not been employed for four years, she testified that it had been her intent to again seek employment when her children were older. Because of her injuries, the positions that she could hold would seem to be somewhat limited. The question of determining whether a given award for damages is ex-

cessive is one of the most difficult questions that confronts an appellate court, and it is only where there is no evidence on which the amount allowed could properly have been awarded that there is justification for reducing a judgment. While the judgment herein rendered is rather generous, we are not able to say, under all the facts and circumstances, that it is excessive.

Affirmed.

