JAMES BEARD, D/B/A BEARD REAL ESTATE *v.*
WALTER COGGINS ET UX

5-5371                                      459 S. W. 2d 791

Opinion delivered November 23, 1970

*John I. Purtle,* for appellant.

*Murphy, Arnold & Blair* and *W. G. Wiley,* for appellees.

LYLE BROWN, Justice. Appellant James Beard, d/b/a Beard Real Estate, brought this suit against Walter Cog-

gins and wife, to recover a sales commission on a parcel of land which was sold by appellees after Beard's listing expired. Appellees defended on the ground that the sale did not result from information obtained from or through appellant and conveyed to appellee landowners during the period of the sales listing. A jury trial resulted in a general verdict favoring appellees. Appellant here contends that he should have been granted judgment notwithstanding the verdict, and, secondly, that the verdict was contrary to the law and the evidence.

For a number of years appellees owned a farm in Monroe County on which cotton and soybeans were raised. It was divided into two tracts, designated as the headquarters (12 acres), and the open lands across the road from the headquarters and consisting of 182 acres. In about 1965 appellee Coggins decided, because of a physical ailment, to dispose of the farm lands and obtain a cattle ranch. He negotiated with Richardson brothers, neighbors and substantial farmers, but those negotiations failed to materialize into a sale.

Appellant Beard was a licensed real estate broker residing in Monroe County. He also engaged in the buying and selling of real estate and in the procuring of farm loans. In early September 1967, he contacted Coggins for the purpose of obtaining a listing of the Cogginses farm, stating that he had a prospect that might pay as much as $150,000, being the figure Mr. Coggins said he wanted. A few days later, September 6, 1967, a written listing was executed. That contract gave appellant the exclusive agency of sale of the farm as a unit for a period of two weeks, the sale price to be $150,000.

On the same day the listing was granted, appellant obtained an offer from A. B. Walls. The agreed purchase price was $150,000, conditioned that Walls could finance the sale through the Federal Land Bank, and further conditioned that the purchaser would get the crop for the current year. The loan from the bank did not materialize, and appellee Coggins was not agreeable to letting the crop go with the sale; therefore the Walls proposal collapsed in a matter of a few days. On the last effective

date of the listing between appellant and appellees, appellant obtained a written offer from Richardson brothers. That offer was $120,000 for the open lands. On September 26—six days after the Coggins-to-Beard listing expired—appellant learned that appellees were on the verge of closing a sale with the Richardsons. Appellant contacted appellee Coggins and was informed that his services as a broker were no longer needed. The Cogginses and the Richardsons closed the sale on September 26.

Appellant bases his right to recovery on this provision in the listing contract:

> Owner agrees to pay the commission set forth in Paragraph 2 to Agent if the property be sold or otherwise disposed of by any other person, association or corporation, including Owner, after expiration of above listing period, when such sale or other disposition of the property resulted from or was based upon information given by or obtained through Agent, with notice thereof to Owner, during the period of this contract.

It is undisputed that the sale to Richardson brothers occurred after the listing period expired; however, appellant broker contends that the sale resulted from information given by the broker to the owners, the Cogginses, during the period of the contract. On this crucial point the evidence is somewhat in dispute, as the summary to follow will reflect.

Appellant Beard testified that the day after the Walls deal collapsed he contacted the Richardson brothers and learned that they would pay $120,000 for the open land; that a day or two later (within the listing period) appellant asked appellee Coggins if the latter would be interested in such a sale; and that Coggins declined. Nevertheless, said appellant, he went ahead on September 20 and obtained a written offer from the Richardsons, hoping the headquarters could be sold separately. Appellant concedes that he did not notify appellees of the written

offer until the listing period expired; the record seems to indicate that notice was given on September 26, the day appellees closed the sale with the Richardsons. At that time appellant told appellees that he thought he was entitled to a commission.

Witness John A. Latimer, Jr., was the manager for Federal Land Bank in five counties, including Monroe. Two years previously—when Coggins first decided to sell his farm—the two men discussed it and Latimer told Coggins about the interest of the Richardsons in buying the open lands. Coggins was said to have called Latimer on September 26, 1967, to tell him that he had decided to sell the farm in two parcels and that Latimer could so notify the Richardsons. As a result of that contact, the Richardsons and Coggins, assisted by Latimer on the paper work, closed the sale that day. Latimer testified that he felt sure Coggins had knowledge that appellant was, in his conversation with Coggins, making an offer for the Richardsons; however, Latimer could not say that Coggins had that knowledge before the listing expired.

Witness Barner Richardson verified that he talked with Coggins in about 1965 about the purchase of the lands but that Coggins withdrew from the negotiations. Richardson's next contact, so he testified, was with appellant, to whom he gave a written offer accompanied by earnest money; that six days later, September 26, Latimer called Richardson and informed him that Coggins was ready to sell his farm. Thereupon, Richardson called appellant because appellant held the written offer. Appellant informed Richardson that appellant was unable to reach an agreement with Coggins about a commission, and told Richardson to "go ahead and make the deal." Shortly thereafter, on the same day, the deal was closed. Richardson ventured the conclusion that Beard was instrumental in the Richardsons making the offer, but of course he had no knowledge of what transpired as between appellant Beard and Coggins.

Appellee Walter Coggins was the only witness to testify in his behalf. Here is a fair abstract of his pertinent testimony:

A few years ago my health got bad and I tried to sell the farm. That is when I first contacted the Richardsons. When I gave Beard the listing on September 6, 1967, he told me he thought he could get $150,000 for it, for the entire place. That same day he came to me with an offer from Walls but that sale fell through and Beard said he was returning Walls' deposit of $1,000. It rocked on a few days and Beard tried to get me to split up the farm and sell the open lands to the Richardsons but I declined, insisting that I had listed the entire farm with him and that he was not authorized to sell it in parcels. At no time prior to the expiration of the listing did appellant inform me of the written offer from the Richardsons. I already knew what the Richardsons were willing to do. Mr. Latimer had discussed that fact with me about two weeks before I gave Beard the listing. It was on September 26 (six days after expiration of the listing) that I decided to split the farm because I thought I had a sale for the headquarters; in fact I did sell the headquarters later for $25,000. I called Mr. Latimer on the 26th and told him I was ready to split the farm if the Richardsons were still interested. After the deal was closed that day the Richardsons told me about their offer to Beard; that was the first time I knew it.

Appellant insists that a judgment notwithstanding the verdict should have been granted. Such a judgment is appropriate only if it can be said that the trial court should have directed a verdict in favor of the plaintiff (appellant), which is a rarity. *Spink* v. *Mourton,* 235 Ark. 919, 362 S. W. 2d 665 (1962). In testing the sufficiency of the evidence on a motion for a directed verdict the testimony and all reasonable inferences are viewed in the light most favorable to the party against whom the verdict is sought. *Page* v. *Boyd-Bilt, Inc.,* 246 Ark. 352, 438 S. W. 2d 307 (1969). We conclude that a judgment n.o.v. was properly denied and we shall shortly discuss the evidence which supports that conclusion.

Appellant next contends that the verdict was contrary to law and that there is an absence of substantial

evidence to support it. As to the law, the case was submitted on instructions which are not questioned on appeal. As to the substantiality of the evidence we cannot disturb the jury's conclusion "unless we can say there is no reasonable probability in favor of appellee's version, and then only after giving legitimate effect to the presumption in favor of the jury findings." *McWilliams* v. *R & T Transport*, 245 Ark. 882, 435 S. W. 2d 98 (1968).

The vital question for the jury to resolve, under the court's instructions, was whether the sale of September 26 to Richardson (which was after the expiration of the listing period) "resulted from or was based upon information given by or obtained through Agent, with notice thereof to Owner, during the period of this contract." There was substantial evidence that Coggins had for some time known of the Richardsons' interest in his property and that their continued interest in the open farm lands was again made known to Coggins about two weeks before the listing with Beard was signed. In other words, the jury could have logically reasoned that a listing with Beard was wholly unnecessary to reveal to Coggins the interest of the Richardsons in a purchase; it would therefore not be unreasonable for the jury to conclude that Beard's contact with the Richardsons played no part in the consummation of the ultimate sale. See *Hatchett* v. *Story*, 221 Ark. 120, 252 S. W. 2d 78 (1952). Also, it is undisputed that the written offer executed by the Richardsons was not communicated to Coggins until after the expiration of the listing contract with Beard.

There is evidence that Coggins and Beard, within the listing period, discussed a proposed sale to the Richardsons; there is the statement of Richardson that he thought Beard was instrumental in setting up the sale; and Latimer testified to his impression that Beard made an offer to Coggins on behalf of the Richardsons, although he could not fix the time of the offer. Yet, in testing the substantial nature of the evidence to support the verdict, we look at that evidence which is "favorable to appellee alone." *Mo. Pac. R. R. Co.* v. *Hampton*, 195 Ark. 335, 112 S. W. 2d 428 (1938). Having so tested appel-

lees' evidence, and adhering to the presumption in favor of the jury verdict, we find substantial evidence to support the judgment.

Affirmed.