William Earl LOVE et al *v.*
H. F. CONSTRUCTION COMPANY, Inc.

76-391                                        552 S.W. 2d 15

Opinion delivered June 20, 1977
(Division I)

*Williams & Gardner,* for appellants.

*Gordon, Gordon & Eddy,* for appellee.

FRANK HOLT, Justice. This appeal involves separate contracts for the construction by appellee of five dams for the

appellants, Commissioners of Point Remove Creek Watershed Improvement District. By the terms of the written contracts, the appellee contractor was required to make whatever changes or modifications which might be requested by appellants during the construction of these dams. If any increased or lessened costs resulted and could not be agreed upon, the contractor had the right to reserve the claim and seek an adjustment later. After the completion of the projects and being unable to resolve their differences as to certain changes during construction, appellee contractor brought the suit against the appellants to recover certain claims allegedly due which resulted from modifications, changed conditions, an overrun, an underrun and a liquidated damage assessment. The quality of appellee's construction is not disputed. The jury returned verdicts in favor of appellee on all five contracts. Appellants assert four points for reversal. They first argue that the court erred in denying their motion for a directed verdict on four of the five contracts in which appellee released all claims without also stating the dollar amount as to its excepted claims. Further, if that was not error then the court erred in not granting a directed verdict because of insubstantial evidence to support the verdicts. We discuss these contentions together.

The five written contracts specified that upon completion of the work, appellee would be paid when it furnished a final release of all claims against appellants "other than claims in stated amounts as may be specifically excepted by the Contractor from the operation of the release." When appellee signed the releases and was paid, it excepted as to certain specifically listed claims on all of the five releases. Only on one of the five releases did appellee state the amount claimed.

Appellants argue that since the appellee contractor signed a release when paid, it is limited by the written terms of the contract to a recovery of those specific exceptions reserved and the amounts stated in the releases. Appellants rely on cases from the U.S. Court of Claims: *U.S.* v. *Wm. Cramp & Sons Ship and Engine Building Co.*, 206 U.S. 118, 27 S. Ct. 676 (1907); *J. G. Watts Construction Co.* v. *U.S.*, 161 Ct. Cl. 801 (1963); *Shepherd* v. *U.S.*, 113 Fed. Supp. 648 (1953); and *Indland Empire Builders, Inc.* v. *U.S.*, 424 Fed. 2d 1370 (1970).

Here appellants recognize that these cases are not decisive. However, it is asserted that the principle of law enunciated there is persuasive. It is argued that the tenor of these cases is that a contractor's release limits any future recovery unless there is a specific item, together with the amount claimed, reserved in the release. Even so here, when the appellee contractor executed the releases, it excepted or listed certain claims on each of the five contracts. To say that appellee intended to release appellants from all claims would be inconsistent with the inclusion of the specifically excepted claims. As we now discuss, it appears the appellants had notice in writing of the dollar amount of each exception or claim (except two) before or at the time the releases were executed by the appellee. In our view, consequently, there was substantial compliance with the written contract requirement that the stated amounts were to be indicated in writing along with the enumerated exceptions or claims.

In testing the sufficiency of the evidence on a motion for a directed verdict, the testimony and all reasonable inferences are viewed in the light most favorable to the party against whom the verdict is sought. *Page* v. *Boyd-Bilt, Inc.,* 246 Ark. 352, 438 S.W. 2d 307 (1969). As to the substantiality of the evidence, we will not disturb the jury's conclusion on appeal unless we can say there is no reasonable probability in favor of appellee's version, and then only after giving legitimate effect to the presumption in favor of the jury findings. *Beard* v. *Coggins,* 249 Ark. 518, 459 S.W. 2d 791 (1970); *Fanning* v. *Hembree Oil Co.,* 245 Ark. 825, 434 S.W. 2d 822 (1968); and *Lumbermens Mutual Ins. Co.* v. *Cooper,* 245 Ark. 81, 431 S.W. 2d 256 (1968). Further, in testing the sufficiency of the evidence as being substantial on appellate review, we need only consider the testimony of the appellee and that part of the evidence which is most favorable to the appellee. *Baldwin* v. *Wingfield,* 191 Ark. 129, 85 S.W. 2d 689 (1935).

Appellants primarily attack what is characterized as the "speculative" nature of the appellee's supporting testimony with respect to additional sums due it as a result of modifications, etc., by appellants. However, the record shows that Watts, president of the appellee construction company, provided the jury with the necessary details (except two) con-

cerning contract rates, applicable schedules, deletions and relevant facts in support of appellee's claim for equitable adjustment or additional payments.

On Site 12, Contract WF-13, as to modification 3 (sloping of right abutment), Watts provided in writing by exhibit 5, before he signed the general release, an itemized cost schedule, deletions and the amount paid under the contract, showing a claimed adjustment due appellee of $18,448.72, which the jury awarded, for additional excavation. As to modifications 8 and 11, Watts testified that the necessity for more fill dirt entailed transportation of dirt from a further and more inaccessible site at a cost of $1.06 per cubic yard. Under the contract appellee was paid only $.30 per cubic yard, leaving an adjustment of $14,700 for the balance due. However, appellee does not document any writing which reserves this stated amount or claimed adjustment.

On Site 18-Contract WF-20, exceptions were made as to modifications 3 and 6. Watts testified that a change in the excavation process and the installation of asbestos pipe delayed operation for which he claimed a balance due of $23,188.16 as was detailed in a four page letter (exhibit 1) predating the release, based on a fixed cost per day operating formula. The jury reduced the claim to $12,500.

On Site 9, Contract WF-11, as to modification 15, Watts furnished in writing, by exhibits 13 and 13A, a schedule of increased costs of $7,096.32. By these exhibits and his testimony, there was an increase in the emergency spillway excavation over the 25% allowable by the contract. There was a detailed schedule of increased costs because of the modifications. Watts testified that after deletions and a reduction of $2,611.84, the change here ran 9,856 cubic yards over the 25% allowable at a cost of $1.21 per cubic yard, while under the contract he was paid at a rate of $.49 per cubic yard, leaving a balance of $4,484.48 due, which the jury awarded. As to the $3,300 (22 days delay at $150 per day in completion) for liquidated damages assessed and withheld by appellants, it appears Watts protested this exact deduction when he stated in the final release that sufficient time was not allowed by appellants in the sequence of construction. He

testified that the delay resulted frmm appellants' modifications. As to modification 5, Watts testified as to extra expense in obtaining necessary sandstone from an outside source and transportation to the site. He claimed an adjustment of $5,632, which was awarded by the jury. However, it appears there was no exhibit or anything in writing presented to appellants as to the dollar amount claimed either before or at the time the appellee signed the release.

As to Site 5-Contract EF-2, Watts testified and provided a detailed cost analysis schedule for additional expenses occuring when excavation encountered large rocks instead of dirt. By exhibit 17, a letter attached to the release, appellee claimed the amount of $11,045 which the jury awarded for this change of the contract. Appellants agree that this exception and stated amount substantially conforms to the requirement of the contract. As to Site 17-Contract WF-23, modification 3, Watts testified that there was a deletion in the rock excavation of the emergency spillway. Although this reduced the contract price, appellee encountered increased costs in the deletion and rental fees for equipment not used. It appears this was supported by a three page written cost computation schedule submitted to appellants in which appellee claimed an adjustment of $5,323 which the jury awarded.

We hold the court did not err in refusing to direct a verdict since there is ample substantial evidence to support the jury's verdicts other than two exceptions indicated: i.e., the claims of $14,700 and $5,632. We recognize that appellee asserts that as to the dollar amounts claimed, a "declaration was made in writing before the releases were executed." However, it does not appear there is anything in writing reserving the dollar amounts of these two claims. Consequently, these two claims are not in substantial compliance with the terms of the contract.

Neither do we agree with appellee that appellants' acceptance of appellee's final releases constituted a waiver of the requirement that the dollar amount be stated along with the exception. It was appellee who signed a final release. The contract required that any additional claims, which could not be resolved, should be reserved by listing the claim and stating the dollar amount in the release.

Appellants next contend that the lower court erred in refusing to give their requested instruction which, in effect, told the jury that if appellee failed to set out the stated amounts in the release forms, then the release "would bar" recovery. This instruction was properly refused because it does not adequately state the material issues of the case and is clearly of a binding nature. *Miller* v. *Ballentine,* 242 Ark. 34, 411 S.W. 2d 655 (1967).

Appellants attack the 10% interest awarded from the date of judgment. It is pointed out that at the time the contracts were entered into and completed the statutory rate of interest on judgments was only 6%. However, this statute, Ark. Stat. Ann. § 29-124 (Supp. 1975), was revised before trial allowing 10% interest on a judgment. Therefore, we find no error in applying the 10% rate of interest per annum.

Appellants also attack the prejudgment interest award of 6% from the date of contract completion. They contend that the claims here were unliquidated and, therefore, unascertainable without a trial. Hence, they argue, interest can only be awarded from the date of the judgment. We agree with appellee's response that the claims here were capable of ascertainment with a reasonable degree of certainty and that the interest was properly allowed from the date of contract completion in order to adequately compensate appellee for the monies wrongfully detained. See *Tech-Neeks, Inc.* v. *Francis,* 241 Ark. 390, 407 S.W. 2d 938 (1966); *Kincade* v. *C. & L. Rural Elec. Coop. Corp.,* 227 Ark. 321, 299 S.W. 2d 67 (1957); and *Loomis* v. *Loomis,* 221 Ark. 743, 255 S.W. 2d 671 (1953).

As indicated, there was not substantial compliance with the written terms of the contract with respect to the claims of $14,700 and $5,632. To that extent the judgment should be modified.

Affirmed as modified.

We agree: HARRIS, C.J., and GEORGE ROSE SMITH and ROY, JJ.