Ides William HARRIS, Individually and as Administrator of the Estate of Carrie HARRIS *v.* Gail W. DAMRON

CA 79-186                                    · 594 S.W. 2d 256

Opinion delivered January 30, 1980
Released for publication February 20, 1980 ·

*Owens & Fikes,* for appellant.

*Bridges, Young, Matthews, Holmes & Drake,* for appellee.

JAMES H. PILKINTON, Judge. The decedent, Carrie Harris, was struck and killed by an automobile being driven by Mrs. Gail Damron. The accident happened at approxi-

mately 8:45 a.m. on March 23, 1977, as Mrs. Harris was attempting to cross U.S. Highway 270 in front of her house.

The allegations of negligence were that Mrs. Damron was speeding in that she was traveling in excess of 55 miles per hour in a 45 mile per hour speed zone; and, that she failed to exercise reasonable care under the circumstances. Recovery was sought for funeral expenses of the decedent, and for mental anguish on behalf of the surviving adult children of the deceased.

The defendant filed an answer admitting that Carrie Harris was struck by an automobile driven by her on the highway in question, but Mrs. Damron denied all other material allegations of the complaint. In addition, Mrs. Damron claimed that the death of Carrie Harris was solely and proximately caused by the negligence of Carrie Harris.

The issues were tried before a jury. A verdict was returned for the plaintiff and the jury awarded damages of $850.00 to the estate of Carrie Harris, but no damages were awarded to her adult children for mental anguish. The plaintiff below appealed to the Arkansas Supreme Court and the case has been assigned to the Arkansas Court of Appeals under Rule 29(3).

## I.

Appellant first contends that the trial court erred in refusing to admit plaintiff's offered exhibits No. 7, 8, 9, 10 and 11.

The evidence shows that Mrs. Harris was 80 years old, but in good health for a person that age. She lived on the south side of Highway 270. At the time of the occurrence, Mrs. Harris was leaving her house and going across the highway to a relative's house. The Harris home was the first house east of the Highway 270 and Highway 104 junction and is surrounded by trees. The state trooper who investigated the accident testified that if a person was not looking for a house, or did not glance in that direction, you might miss the Harris house and not know it was there.

No one knows whether Mrs. Harris was attempting to walk or run across the highway. The accident occurred before the Highway 65 four lane was opened in Jefferson County, and there was a lot of extra Highway 65 traffic on Highway 270 at the time. The area of impact was established by debris which was approximately 500 feet east of the Highway 104 junction. Mrs. Damron testified she was going between 55 and 60 miles per hour when she went through the 104 junction. She did not see Mrs. Harris, and the Damron car struck Mrs. Harris killing her instantly.

The body of Carrie Harris was found in the northbound shoulder of Highway 270 approximately 94 feet and 4 inches from the area of impact. A severed limb from her body was found 166 feet and 1 inch from the area of impact.

The court admitted plaintiff's Exhibits 1 through 6, inclusive. Plaintiff's Exhibit 1 was a diagram of the accident scene. Plaintiff's Exhibit 2 depicts the front view of Mrs. Damron's vehicle, after the impact, as parked on the eastbound shoulder of the highway. Plaintiff's Exhibit 3 is a photograph showing the eastbound view of the highway indicating where the body of Mrs. Harris came to rest. This photograph also shows some debris. Plaintiff's Exhibit 4 shows a close up front view of the Damron vehicle and indicates the damage done to the vehicle because of the impact. Plaintiff's Exhibit 5 is a westbound view showing the position of Mrs. Harris' body on the north shoulder of the highway. Exhibit No. 5 also shows the terrain along Highway 270 in the area of the accident. Plaintiff's Exhibit 6 is a statement of the funeral bill totaling $1699.45.

In addition, appellant had offered Plaintiff's Exhibits 7, 8, 9, 10 and 11. The trial court refused to permit the introduction of these photographs on the basis that the prejudicial effects of them would outweigh any evidentiary value that these photographs might have. Appellant has not reproduced and made a part of his abstract the photographs which were offered as Exhibits 7 through 11, which the court refused to admit. This court would be justified in refusing to consider appellant's argument under Point I because of the failure to comply with Rule 9(d) of the Supreme Court and

Court of Appeals of the State of Arkansas. Obviously the court is handicapped in passing on the admissibility of photographs it can see only by searching them out in the transcript. Be that as it may, from the transcript it appears that the trial court was correct in excluding the photographs in question. None of the offered photographs which the court refused to admit tended to prove anything in dispute. Appellant's Exhibit 7 shows the severed limb of the decedent covered by some articles of clothing. Exhibits 8, 9, 10, and 11 are somewhat gruesome pictures taken by the Coroner, showing a severed limb and decedent's body in the morgue. The investigating officer testified fully and at length about the accident scene. Appellee admitted that her car struck and killed Mrs. Harris. The evidence established without dispute that one of the decedent's limbs was severed in the accident. In view of the other evidence introduced, including the exhibits which were admitted, the court was correct in excluding these photographs on the basis that the prejudicial effects of them would outweigh any evidentiary value that the excluded photographs might have. Ark. Stat. Ann. § 28-1001, Rule 403 (Repl. 1979).

The admissibility of such photographs addresses itself to the sound discretion of the trial court. We do not disturb the ruling of the trial court unless there is an abuse of discretion. *Wheeler, Adm'x* v. *Delco Ben,* 237 Ark. 55, 371 S.W. 2d 130 (1963); *McGeorge Contracting Company* v. *Mizell,* 216 Ark. 509, 226 S.W. 2d 566 (1950).

## II.

Appellant next argues that the judgment on the jury verdict is contrary to the law and evidence of the case. Appellant says there is no substantial evidence to support the verdict. We find no merit in this argument. The case was fully tried and the issues were submitted to the jury under instructions that are not questioned. The jury found for appellant and, by general verdict, placed a greater part of the negligence on Mrs. Damron. The verdict for the estate in the amount of $850.00 damages, instead of the full amount of the funeral bill, indicates that the jury also found Mrs. Harris

guilty of some negligence. No argument is made that the jury was in any way improperly instructed on the measure of damages, or on any other issue. Certainly there is substantial evidence to sustain this jury verdict, and no grounds exist to disturb it on appeal. *McWilliams* v. *R & T Transport, Inc.,* 245 Ark. 882, 435 S.W. 2d 98 (1968). See also *Love* v. *H. F. Construction,* 261 Ark. 831, 552 S.W. 2d 15 (1977).

## III.

Appellant argues finally that the failure by the jury to award damages for mental anguish to the adult children was contrary to the evidence and the law in this case. The jury was properly instructed on the issue of mental anguish as specified in AMI 2215. Based on this record, the jury was entitled to find that none of the adults had suffered more than the usual and normal grief attendant upon the loss of a loved one. *Eisele, Adm'r* v. *Beaudoin,* 240 Ark. 227 at 231, 398 S.W. 2d 676 (1966). See *St. Louis S.W. Ry. Co.* v. *Pennington,* 261 Ark. 650 at pp. 670-683, 553 S.W. 2d 436 (1977), for a complete discussion of the issue of mental anguish in Arkansas.

Affirmed.